AND

## THE CORRECTION OF ERRORS

OF THE

## STATE OF NEW YORK,

IN DECEMBER, 1825.

---

WILLIAM MACKIE, ANDREW MILNE and ANDREW LOCKE-
HART, appellants.
*against*
WILLIAM CAIRNS, ROBERT SEDGWICK and DANIEL LORD,
junior respondents ;
and
WILLIAM CAIRNS, ROBERT SEDGWICK, and DANIEL LORD,
junior appellants,
*against*
WILLIAM MACKIE, ANDREW MILNE and ANDREW LOCKE-
HART, respondents.

C., a merchant in failing circumstances, executed to trustees, sundry deeds
of assignment of his property, in trust to pay his creditors, who were there-
by ranked into classes, and were to be paid in a certain order of priority.
One of the deeds declared a trust to pay a certain sum annually, for a
limited time, to C., the debtor ; and all the assignments were subject to
this trust. By another of the deeds, any creditor who should attach any of
the debtor's property, was to be excluded from the benefit of the trusts ;
which last provision was subsequently annulled. Afterwards, fearing that
the assignments might not prove valid, C. confessed a judgment to the same
trustees, upon the same trusts for creditors ; but without the reservation in
his own favor ; which judgment was intended to be resorted to, only in case
the assignment should not be adjudged valid.

*Held,* that both the assignments and judgment were void *in toto,* being a fraud upon creditors.

An assignment in fraud of creditors, being valid, as between the parties, the assignee cannot take a judgment and execution, which shall bind the subject of the assignment, until this is annulled, released or abandoned, so as to revest the property in the assignor.

The intention to use a judgment confessed by a fraudulent assignor, to a fraudulent assignee, only in case the assignment should be adjudged invalid, connects the judgment, and infects it with the vices of the assignment.

An insolvent debtor may pay some creditors in preference to others ; and may secure his preferred creditors by assignment or judgment in trust for such creditors ; but he can make no assignment of any part of his property in trust for himself ; and if the security for the benefit of his creditors contain any such provision, or be intended to come in aid of another security containing such provision, it is void, not only for the portion reserved, but for the whole ; not only in equity but at law.

A deed or judgment void in part, as being a fraud on creditors, is void *in toto.*

A contract, or judgment, illegal and void in part, as being against the provisions of a positive statute, is illegal and void *in toto.*

The cases of *Murray* v. *Riggs,* (15 John. 571 ; 2 John. Ch. Rep. 565, 580, S. C.) *Estwick* v. *Caillaud,* (5 T. R. 420 ; 2 Anstr. 381, S. C.) and *Tarback* v. *Marbury,* (2 Vern. 510,) considered and explained, in reference to the question, whether an insolvent debtor may, in a deed of trust for the benefit of his creditors, reserve a provision for himself.

Incumbrancers brought in by a mortgagee on a bill to foreclose, and answering and disclaiming as to him, are entitled to the costs of appearing and answering, out of the mortgage fund ; though they contest the right to the surplus, as between themselves.

Authorities, showing that they are generally entitled to these costs out of that fund, cited by SUTHERLAND, J.

Decree by the Court for the Correction of Errors, making various provisions as to costs, between such incumbrancers, relating to, and awarded by divers interlocutory and final orders and decrees of the Circuit Court, Court of Chancery, and Court for the Correction of Errors, in a cause which was commenced in the Circuit Court, and passed through the two latter Courts by appeal ; the cause having received different determinations on the merits in each Court.

The decision of the Court for the Correction of Errors is binding till its doctrine be altered by the Legislature. Per COLDEN, Senator.

But SAVAGE, Ch. J. seems to question the decision of that Court, in *Murray* v. *Riggs,* (15 John. 571.)

The *lex loci contractus* governs as to the right of property in the garnishee under the foreign attachment law of the state of Louisiana. *Chartres* v. *Cairns,* Court of the E. D. of Louisiana, 1825. Note to the opinion of Colden, Senator.

An assignment, by an insolvent of property in trust for his creditors, reserving a provision for himself is void by the law of Louisiana *Char*

*tres* v. *Cairns, Court for the E. D. Louisiana,* 1825. Note to the opinion of Colden, Senator.

The property of a debtor who fails, belongs in moral justice to his creditors. Per Savage, Ch. J.

Mackie
&
Cairns.

THESE were cross appeals from a decree of the Court of Chancery. The facts are stated in 1 Hopkins' Ch. Rep. 373 to 386, S. C. The prominent facts of the case, will also be found stated in the opinions delivered by SUTHERLAND, J. and COLDEN, Senator, in this Court.

SANFORD, Chancellor, now assigned his reasons for the decree, as in 1 Hopkins' Ch. Rep. 393 to 408, S. C.

The decree appealed from was, in substance, that the judgment confessed by Cairns to Sedgwick and Lord, was not fraudulent or void, as against Mackie, Milne and Lockhart, junior judgment creditors of Cairns; but that the assignment of conveyance by Cairns, to Sedgwick and Lord, in trust to pay certain creditors of Cairns, was void as against Mackie, Milne and Lockhart, by reason of the trust or provision for the benefit of Cairns; and it reversed the decree of the Circuit Court, awarding costs against Mackie, Milne and Lockhart of their claim, interposed in that Court, to the surplus fund arising from the sale of the mortgaged premises; and affirmed the decree that they should pay the costs of an application in that Court, to examine Cairns, and to alter a previous order or decree in the cause. The decree then provided, that the costs (excepting those of the applications in the Circuit Court, to be paid by Mackie, Milne and Lockhart) should be paid out of the surplus mortgage moneys in question; and that the residue should be paid to Sedgwick and Lord, as senior judgment creditors.

The alteration of the previous decree in the Circuit Court, was made by the Circuit Judge on petition, so as to charge Mackie, Milne and Lockhart with certain of the interlocutory costs, on the ground that this had been unadvisedly omitted in that decree. It did not explicitly appear, whether this amendment was before or after the final decree was enrolled.

Vid. farther as to the history of these costs, the opinion of COLDEN, Senator, post.

It is proper also to state here, that it appeared plainly, from the declarations of Sedgwick, and the course of conduct pursued by the trustees, that it was their intention to enforce their judgment, only in the event of the assignments being adjudged void ; a circumstance alluded to by the Chancellor, 1 Hopkins' Ch. Rep. 394. The facts connecting the judgment with the assignments will be found more particularly stated, in the opinion of COLDEN, Senator, post.

This cause was very fully argued. But as the reasoning and authorities applicable to the case were gone into in the Court below, by the arguments of counsel, and the opinion of the Chancellor, and will now again be found in the opinions delivered here, I state little more of the arguments of counsel than the points made and the authorities cited by them.

*R. Sedgwick* and *S. Jones,* for Cairns, Sedgwick and Lord. It was unequivocally decided by this court, in *Murray* v. *Riggs,* (15 John. 571,) that a *bona fide* conveyance made by a debtor in insolvent circumstances, for the benefit of his creditors, should not be avoided by reason of its providing for the maintenance of the debtor or his family ; and that if the creditors are dissatisfied, their remedy is in equity, to have the provision applied for their benefit. This decision was recognized, in the sense we ascribe to it, by *Austin* v. *Bell,* (20 John. 442 ;) and accords with the general understanding of the legal profession. Many titles to property have doubtless been accepted upon the faith of these decisions, which should not be shaken, even if this court should think that they were originally erroneous. In *Wilkes* v. *Ferris,* (5 John. 335,) a conveyance to the use of creditors, by general words which left a part to result to the assignor, was holden valid. *Murray* v. *Riggs* did not proceed upon the special circumstances of the case ; but on the general ground that a provision like that in question was valid. The acquiescence of creditors, in that case, was relied on merely in respect to several assignments containing a power of revocation, confessedly void, made previously to that of the 31st of May, 1800, which was held good. As to the latter as-

signmment, creditors were prompt in manifesting their dissatisfaction, and litigating it from the first moment.

But if the cases cited may be re-canvassed, we insist they were rightly decided. They are directly supported by *Estwick* v. *Caillaud*, (5 T. R. 420.) It does not follow, that because a deed is in part void by statute, it is therefore, and of necessity, void *in toto*. This has been holden in several cases upon the very statute of fraudulent conveyances. (Rob. on Fraud. Conv. 112. Styles, 428. 1 Ch. Cas. 243. 1 Vern. 285-6. Lane, 22. 5 John. Rep. 335. 1 John. Ch. Rep. 482.) The best construction of a statute is that which comes nearest to the rule and reason of the common law. (Bac. Ab. Statute, (I) pl. 4.) And it cannot be denied that a deed void in part by the common law, may yet be good for the residue. Here we have to rely on the construction which the common law itself fixes. The statute does not in terms declare that where the conveyance is partly void, it shall be so for the whole. This would many times be unjust, and work an injury to the innocent creditor. Can it be doubted that a bond and mortgage, in trust for several specified creditors, the debt to one turning out to be usurious or fictitious, would yet be valid as to all the rest?

*Murray* v. *Riggs*, is decisive to show that the assignment of the 18th of April, 1823, was not void on account of the clause denying all interest in the trust to attaching creditors.

At any rate, the judgment confessed was not affected by any improper trusts. It cannot be rendered void by construction ; but only by proof of actual fraud. And so of any judgment. It does not stand on a footing in this respect with matter *in pais*.

If the assignees have not conformed to the law, this was the result of mistake, and should not prejudice the *cestui que trust*. They should be brought into court, and have an opportunity to rebut the charge of acquiescence.

A debtor has a right to secure one creditor in preference to another. (*Ludlow* v. *Hurd*, 19 John. 218.)

We were not bound to elect between the assignments and judgment. One stood merely as a collateral security to the other. The doctrine of election implies that one thing

operates inconsistently with, and excludes the use or necessity of the other. (*Dillon* v. *Parker*, 1 Swanston, 359. *Sanger* v. *Wood*, 3 John. Ch. Rep. 416.) The party too must have a right to elect. It is denied that we have such a right because the assignments were void.

As to the alteration of the decree, by the circuit court, the counsel cited *Beekman* v. *Peck*, (3 John. Ch. Rep. 415, 416,) and *Lawrence* v. *Cornell*, (4 id. 545.) They insisted that the award of costs in that court upon interlocutory subjects, being a mere matter of discretion, this court would not interfere concerning them.

*T. J. Oakley*, for Mackie, Milne and Lockhart. The judgment confessed by Cairns was fraudulent and void. It was to be set up only in case the assignments should fail. This was a secret; and not expressed in the declaration of the trusts of the judgment. Fraud as to creditors avoids an assignment, though it be on full consideration. (Rob. on Fraud. Conv. 490. 1 Burr. 474-5. Cowp. 434. 8 John. 452. 1 R. L. 75.) The evidence of the fraud is strengthened by the conduct of the assignees subsequent to the judgment, in relation to the execution issued by them. The judgment and assignments cannot both be valid. The latter were good between the parties; (8 John. 161; 1 Cowen, 622; 4 Cruis. Dig. 529;) and the assignees being parties also to the judgment, and having with Cairns constantly maintained the validity of the assignments, are estopped to set up the judgment; and still treat the subject of the assignments as the property of Cairns. They were bound to elect between them; and the whole tenor of their conduct shows that they did elect the assignments.

If the judgment be not fraudulent, the trustees should not avail themselves of it without accounting for Cairns' personal estate.

The assignments are clearly void for the reasons stated by the Chancellor. The cases on this head are also fully considered in *Hyslop* v. *Clark*, (14 John. 458.)

Mackie, Milne and Lockhart ought to have their costs out of the fund, even if both the judgment and assignments

should be holden valid. They came into court as defendants, and merely claimed what they had reason to consider their just rights. As to the questions of costs in the cause, he cited 3 John. Ch. Rep. 61 ; 13 Ves. 370 ; 7 Ves. 583 ; 2 Mad. Ch. 554-5, 2 ed. ; 5 Ves. 117 ; 1 Sch. & Lefr. 12 ; 4 John. Ch. Rep. 608 ; 3 Ves. & Bea. 143 ; 13 Ves. 87 ; 2 Mad. Ch. 559, 2 ed.

As to the right to alter the decree in the circuit court in respect to the costs, he cited Newl. Ch. Pr. 185, Alb. ed. ; Harr. Pr. 322 ; 2 Mad. Ch. 488, 518, 2 ed. ; 2 John. Ch. Rep. 205 ; 13 Ves. 394 ; 2 Mad. Ch. 39 ; 3 John. Ch. Rep. 415 ; 4 id. 545.

That a mistake of the law could not avail any thing to the assignees, he cited 2 John. Ch. Rep. 51 ; 1 id. 512 ; 6 id. 166 ; 2 Cowen's Rep. 678.

He said the objection as to a want of parties could not be made here, inasmuch as it was not urged in the court below. Had this been done, the defect might have been supplied. But the trustees represent the creditors, who are, therefore, virtually before the court. It is not necessary they should be actually brought in.

That a deed void in part by statue, is void for the whole, he cited 22 Vin. Abr. 13, pl. 8, and 14 John. 464, 5, 6.

SUTHERLAND, J. The Chancellor, by his decree of the 9th of March, 1825, decided that the general assignment or conveyance from Cairns, Sedgwick and Lord, made on the 18th of April, 1823, was void in all its parts *in consequence of the trust or provision contained in it, of* $2000 *per annum for the benefit or support of the grantor.* But he held the judgment confessed by Cairns to Sedgwick and Lord on the 1st of August, 1823, to be valid ; and that by reason of its priority to the judgment of Mackie and others against Cairns, Sedgwick and Lord were entitled to the fund in controversy. From the first part of the decree denying the validity of the assignment, Cairns, Sedgwick and Lord have appealed and Mackie and others have appealed from that part of the decree which establishes the validity of the judgment. If either the assignment or the judgment is sustained, it will entitle Sedgwick and Lord to the fund in controversy.

ALBANY,
Dec. 1825.

Mackie
&
Cairns.

Whether the
assignment
was valid.

Only ques-
tion is whe-
ther the illegal
trust makes
the whole void.

At common
law, it does
not, tho' the
illegal trust
might be
avoided.

I shall first consider the question as to the validity of the assignment. It is not attempted to be impeached on the ground of *actual fraud*. It is not pretended that the debts which it was the primary object of the assignment to secure were nor justly due. Nor is the right of a debtor in failing or insolvent circumstances, to prefer one class of creditors to another, called in question. But the assignment is said to be void within the statute of frauds, *as being made with the purpose and intent, in judgment of law, to delay, hinder and defraud creditors,* in consequence of the trust which it contains in favor of the grantor. That trust is as follows : "In trust, nevertheless, that the said Robert Sedgwick and Daniel Lord, jun. shall first pay to the said William Cairns, out of the proceeds of the assigned premises, from time to time, for the support of the said William Cairns and his family, after deducting all costs and reasonable charges of the said Robert Sedgwick and Daniel Lord, jun. in and about the premises, at and after the rate of $2000 per annum, until the said William Cairns shall be discharged from his debts under some insolvent or bankrupt law, or otherwise ; provided, however, that such period of payment to the said William Cairns, shall not endure beyond the period of four years from the date hereof."

It is conceded that this is a trust which cannot be enforced if objected to by the creditors of the assignor, or any of them, provided the funds assigned are inadequate to the payment of their debts ; and the only question is, whether the whole assignment is rendered void by the illegal trust. An assignment of property to a third person for the benefit of the assignor, is, as against his creditors, equally inefficacious at common law, as it is under the statute. Standing alone and unconnected with any other trust, it would be conclusive evidence of an actual fraudulent intent to put his property beyond the reach of his creditors. No other construction could be put upon the transaction ; for, in the nature of things, it could originate in no other motive.

But a partial reservation for the benefit of the assignor, out of a general assignment for the benefit of his creditors, although it might be avoided as being constructively fraudu-

lent at common law, clearly would not vitiate the other trust and annul the whole deed.

But under the statute, it is contended the result is different. In *Riggs* v. *Murray*, (2 John. Ch. Rep. 565, 580; 15 John. Rep. 571, S. C. on appeal,) this question came before the late chancellor. That was the case of an assignment by an insolvent debtor of *all his property* upon certain specified trusts; reserving *to the grantor the power to alter or revoke the trust and appointments* at his pleasure. The assignment was made on the 23d of March 1798. On the 24th, the grantors by deed declared certain other trusts, reserving as in the first deed, the power to alter or revoke the appointments within a year. On the 21st of March, 1799, the grantors by deed revoked and annulled the appointments and trusts of the deed of the 24th of March, 1798; and declared certain other trusts, but still reserving the power to alter and revoke. On the 22d of March, certain other trusts were declared, and the power to alter and revoke was still reserved. On the 31st of May, 1800, the grantors made a final and absolute declaration of the trusts, without any reservation of the power to revoke or make further appointments; and by this deed the trustees were directed, out of the proceeds of the property assigned, to pay, 1. All the expenses incurred. 2. *A sum not exceeding* $2000 *per annum for each of the grantors,* (*four in number*) *towards their support from the 28th of March,* 1798, *until they should be respectively discharged from their debts, or until one year after they should be discharged by law.*

How it is
upon the stat-
ute.

Riggs &
Murray not
distinguishable
from this case.

On the 15th of June, 1801, a commission of bankruptcy was issued against Robert Murray; in July, 1801, an assignment of his property was made to the complainants in the suit, who were the assignees under the commission; and in 1802, they filed their bill against the trustees to annul and set aside the assignment. The bill alleged that the assignment was *fraudulent and made to delay, hinder and defraud the creditors of the grantors.* The fraud was denied in the answers of the assignees, and a reference was made to a master by consent to ascertain the amount received by J. B. Murray, one of the assignees; and what sum he was en-

titled to under the deed of trust. Upon the report of the master, which found a large balance to be due to J. B. Murray, and upon the equity reserved, without any proofs having been taken before the master except as to the accounts, the cause came to a hearing before the chancellor. And he held the assignment *void on account of the power of revocation which it reserved to the grantors.* He considered all the deeds as part of the same transaction, and constituting in fact but one act or deed ; and although the last deed of the 31st of May, 1800, did not reserve the right to revoke or alter the trusts in terms, still, as it referred to the deed of 1798, which did contain that power, he held that they must be considered and taken in connexion with each other. He remarks, "It may therefore be assumed as a clear and undisputed fact, that whether these deeds be viewed separately, or taken in connexion as parts of one whole, and forming one entire act they were made subject to the future disposition and power of the grantors, as well in respect to the debts due to Clark and Murray, (the trustees,) as in respect to the debts of the other creditors alluded to in those deeds. This leads us" (the chancellor continues,) "to the consideration of the important question arising out of this case; whether such an assignment by an insolvent debtor to a few select creditors, with such a power of revocation attached to it, can be deemed valid in law. The necessary inference seems to be, that it was to 'delay, hinder, or defraud creditors.' That such powers of revocation are fatal to the instrument, and poison it throughout appears to have been well established by authority."

He then comes to the consideration of that part of the case, which has an immediate bearing upon the one now under consideration. He says "a reservation of a part of the interest to himself. as in *Tarback* v. *Marbury,* (2 Vern. 510,) and in *Estwick* v. *Caillaud,* (5 T. R. 420,) does not destroy the provision in respect to the residue ; though if the part unreserved be deficient, the creditors might perhaps apply to a court of equity for the residue. But if the power enables the grantor to defeat the whole provision, all the cases concur in declaring it null and void.

ALBANY,
Dec. 1825.

Mackie
&
Cairns.

Murray      v.
Riggs,      15
John. 571.

Here is a clear and explicit declaration of the opinion of that learned judge, that a reservation of a part of the trust fund, for the benefit of the assignor, will not vitiate the other provisions in the deed. This was not an *obiter dictum*. It related to a point fairly presented in the cause, and on which the Chancellor could not well have avoided the expression of an opinion.

Upon an appeal brought to this court, the prevailing opinion was delivered by Ch. J. Thompson. And in relation to the reservation for the maintenance and support of the grantors, his opinion was in perfect coincidence with that of Chancellor Kent. He says "The grantors having reserved to their own use, for their maintenance and support, a part of the property covered by this deed, forms no objection to the appropriation of the residue. This is fully established by the cases I have already referred to, and is indeed admitted by the Chancellor in the case before us; though in case of a deficiency to satisfy the creditors, they might apply to a Court of Equity, for the appropriation of the property so reserved towards the payment of their demands." Chancellor Sanford considers this opinion of Ch. J. Thompson, as founded on the peculiar circumstances and equities of the case before him; and not as intended to sanction and establish the general proposition, which, in terms, it seems to maintain. He says, "I cannot understand the decision of the Court of Errors, to legalize, by one universal rule, these reservations by an insolvent debtor for his own use. But I understand by their decision, that in special cases of peculiar equity, the whole assignment shall not be subverted by this illegal trust." I cannot but think with great deference and respect, that the Chancellor has misapprehended the scope and bearing of the opinion of the Ch. Justice. He was for reversing the decree below, principally on the ground that the deed of the 31st of May, 1800, *was absolute and irrevocable;* and did not, like the previous deeds, contain a reservation to the grantors, of a power to revoke and alter the trusts; and that that deed, in connexion with the original assignment of the 23d of March, 1798, was sufficient

to protect and establish the appellant's preference; and that the intermediate deeds or declarations of trust, might be laid out of view.    That as the title of the respondents, as assignees of the bankrupt, did not accrue until June, 1801, they had no right to impeach the trust deeds, on grounds which had been removed before they had any right or interest in the question.    That the power of revocation did not render the deeds absolutely void and incapable of confirmation, as between the parties, before the rights of third persons intervened.    Whatever, therefore, might have been the original character of the transaction, he held that every legal objection to it was removed, and the title of the appellants rendered perfect before the respondents had any interest in the funds in controversy.    That Robert Murray, himself, after the deed of the 31st of May, had no control over the trust fund ; and that his assignees under the commission, could take nothing which the bankrupt had not a right to assign to them.    He remarks, "there can be no doubt, but at that time, (May, 1800,) an original assignment might have been legally made, giving to John B. Murray all the claim now set up ; if so there could be no good reason against his then taking a ratification or confirmation of any prior defective assignment."    He then proceeds : " Where the creditor is pursuing his debtor with a judgment and execution, or in any other manner, to enforce payment of his demand, an assignment of the debtor's property, *containing a power of revocation,* may very well be considered as made to ' delay, hinder or defraud creditors,' according to the language of the statute of frauds.    But I do not see how it could, in any sense, be said *to delay or hinder* a creditor who was taking no measures to enforce payment of his demand as in the case now before us.    For any thing that appears, all the creditors of Robert Murray & Co. were satisfied with the assignment, and the provision there made for the payment of the debts.

The Chief Justice is here considering the effect of the power of revocation in the deeds prior to that of May, 1800, and he admits, that that provision would clearly have rendered them void against any creditor, who, during their ex-

istence, might have attempted to enforce payment of his demand. As against such a creditor, he concedes, they must have been considered as made with the intent *to delay, hinder and defraud him.* But his argument is, the respondents are not such creditors; they did not become creditors until after the power of revocation in those deeds had been abrogated by the deed of 1800; and they ought not now to be permitted to impeach the assignment on a ground which had ceased to exist before their title accrued; especially, when for ought that appears, all the creditors of Robert Murray & Co. were satisfied with the assignments, (containing the power of revocation) and the provision there made for the payment of their debts. The parties in interest, during the continuance of those assignments, never complained; and the representatives of those parties, (the respondents, the assignees in bankruptcy) shall not now avail themselves of the objection. The whole argument *relates exclusively to the power of revocation,* and the deeds in which it was contained; that is, the deeds prior to that of May, 1800. Now none of those deeds contained the trust for the benefit of the grantors. That was contained in the deed of May 31st, 1800, which did not reserve the power of revocation. The special circumstances, therefore, on which the Ch. Justice dwelt, and which the Chancellor supposes influenced the judgment of the court, and distinguishes it from the case now before us, I humbly apprehend were urged exclusively in relation to the *power of revocation,* and had no reference to, or bearing upon, the reservation of a portion of the fund for the benefit of the grantors. The Chief Justice could not have intended to say, that, for any thing that appeared in that case, the creditors of Robert Murray & Co. were satisfied with the assignment of the 31st of May, 1800. He could not have intended to discriminate between the respondents who were the representatives of the creditors, and the creditors themselves; and to intimate that the case would have been varied, if the assignment had then been impeached by a creditor instead of the assignees. The assignees succeeded to all the right of all the creditors; and their dissatisfaction with the assignment was conclusive evidence, in judg-

ment of law, that each individual creditor was dissatisfied. (Vid. Rob. on Fraud. Conv. 491, note, (K.).) Nor could he have intended to say that none but judgment creditors at the time of the assignment could impeach it. I repeat, therefore, that, in my humble apprehension, this Court did not decide the case of *Murray* v. *Riggs*, upon any special circumstances, so far as the trust in favor of the grantors was concerned. But that they proceeded upon the broad principle, that such a trust, in an assignment for the benefit of creditors, does not, *per se*, vitiate and destroy the whole deed. Nor do I perceive how the judgment in that case can be sustained on any other ground.

Such too was the view the Supreme Court took of that case in *Austin* v. *Bell*, (20 John. 447.) The assignment in that case was impeached on the ground that it contained a reservation of a certain sum for the maintenance and support of the grantor and his family ; and also because it provided, that if any of the creditors named in the assignment should not, within a limited time, assent to the assignment, then the trustees should pay to the grantors the proportion of the fund which would have belonged to such creditors. The assignment was held to be void on the latter ground. But in relation to the first objection, Ch. J. Spencer, in delivering the opinion of this court, remarks, "In the case of *Murray* v. *Riggs*, one of the appointments and reservations in the trust deed of the 31st of May, 1800, was. that the trustees should pay out of the proceeds of the property assigned, towards the support of the grantors, a sum not exceeding $2000 a year for each of the grantors. As to this reservation, the Chancellor was of opinion, on the authority of *Estwick* v. *Caillaud*, (5 T. R. 420,) that it did not destroy the provisions in respect to the residue ; and he intimates an opinion, that if the part not reserved was deficient, the creditors might apply to a Court of Equity for the residue. In this part of the Chancellor's opinion," he observes, " Chief Justice Thompson, (who delivered the opinion of the Court of Errors,) concurred. This, then," he continues, " puts an end to the objection made to this assignment, as to a reservation out of the trust property, of a support, for

ALBANY,
Dec. 1825.

Mackie
&
Cairns.

a limited time, for one of the assignors." The Supreme Court, therefore, considered the position upon this subject, laid down by Chancellor Kent, and concurred in by this Court, as a *general proposition ;* and not founded upon the particular circumstances of that case ; and as settling the question that a reservation out of the trust property, for the support of the grantor, for a limited time did not, *per se,* vitiate and destroy the residue of the assignment. Coinciding fully, for the reasons which I have assigned, in this view of the case in *Murray* v. *Riggs,* I cannot consider that question as now open for discussion.

But if it were open, I think the decision on this point in *Murray* v. *Riggs,* fully supported by the case of *Estwick* v. *Caillaud,* (5 T. R. 420.) In that case Lord Abingdon assigned a certain mansion house, with the park pleasure grounds, and personal chattels belonging to it, to one Estwick, for 99 years, in trust to receive the rents and profits, and pay one half of them to the grantor during his life ; and the other moiety to certain creditors enumerated in a schedule attached to the deed. One Townsend, not being a favored creditor obtained a judgment against Lord Abingdon, and levied an execution on some of the property assigned ; for which the assignee brought an action of trespass. Upon the trial it was left to the jury to determine the actual intent of the transaction ; and they found it to be fair, and gave a verdict for the plaintiff. Upon a motion for a new trial, it was contended that the deed was void on the face of it, under the statute of frauds, 13 Eliz., on account of the reservation in favor of the grantor. But the court were unanimously of opinion that that did not destroy the deed. It was contended in *Austin* v. *Bell,* and also in this case, that *Estwick* v. *Caillaud* was decided on the ground, that it was a partial and not a general assignment of the property of the grantor ; and that, for aught that appeared, enough was retained by him to pay the creditor who was then prosecuting. Spencer, J. in *Austin* v. *Bell,* also remarks, "that the case of Estwick & Caillaud was decided on the ground that Lord Abingdon had not assigned all his property ; but that he reserved enough to satisfy the particular creditor who

*Estwick* v. *Caillaud,* 5 T. R. 420.

sought to set aside the assignment." Now I humbly appre-
hend, that it does not appear that that was the ground of
the decision, in any sense, that affects *the question of the
reservation for the benefit of the grantor.* The fact that it
was a partial assignment is inferred only from the circum-
stance that it did not appear on the face of the deed to be a
general one; and this circumstance is alluded to by the
Judges, not intending to show that the deed was not fraud-
ulent under the statutes of Elizabeth, but that it did not come
within the operation of the spirit of the bankrupt laws, as be-
ing a general assignment for the benefit of favored creditors.
Lord Kenyon says, " There was nothing fraudulent either
in the construction of the deed, or in the manner of carry-
ing it into execution. It was neither illegal or immoral to
prefer one set of creditors to another. This case differs in
many respects from the preference given by bankrupts. But
it was never held, even in the case of a trader, that he could
not give a preference in some respects, provided he did not
exhaust his whole estate, or approach so near to a disposi-
tion of the whole, as that the exception was merely coloura-
ble. But as it does not appear that this was a conveyance
of the whole of Lord Abingdon's property, the case is deli-
vered from the objection which asserts that the deed is frau-
dulent because it was only intended as a provision for some
of the creditors to the exclusion of the rest." The objection
was, that the assignment was bad, because it was not for the
benefit of all the creditors. Lord Kenyon answers it by say-
ing, it was a *partial,* not a general assignment, having no
reference or allusion whatever to the reservation in favor of
the grantor. Mr. Justice Ashurst says, " There is nothing
illegal on the face of the deed : for a debtor may prefer one
set of creditors to another, except in certain cases of the
bankrupt laws. Where the bankrupt laws do not interfere,
a debtor may give a preference to particular creditors.
There appears," he continues, " no badge of fraud in any
part of the transaction. All the legal property was trans-
ferred to the plaintiff for legal purposes. And though a
part of the profit was reserved for Lord Abingdon himself,
that alone will not avoid the legal estate in the trustee for the

benefit of the schedule creditors. And when those creditors are satisfied, the other creditors may apply to a Court of Equity for the residue." Mr. Justice Buller says, "If we are to decide on the face of the deed itself, that is a question of fraud in point of law. Now taking the deed by itself, not accompanied with the circumstance that there were other creditors of Lord Abingdon, there is no pretence for the objection. Nor does the objection occur here, that this was a conveyance of the whole of Lord Abingdon's property ; for it is not so stated in the deed, and the contrary appears from the evidence ;" alluding, evidently, to the objection which had been answered by Lord Kenyon, that it was an assignment for the benefit of favored creditors ; and therefore fraudulent within the spirit of the bankrupt laws. The fact that Lord Abingdon had previously to the assignment, offered Townsend the materials of another building in satisfaction of his demand, could not have affected the question of *legal fraud* appearing on the face of the deed, whatever influence it might have had on the question of actual intent. (Vid. also 2 Vern. 510 ; 4 East, 14 ; 1 Ves. Jun. 160.)

Nor am I dissatisfied with the decision in *Murray* v. *Riggs*, upon principle. The question is not, whether a man can put his property beyond the reach of his creditors, by conveying it in trust for his own use ; it is conceded that he can not ; but it is whether the reservation of a moderate portion of his property for the maintenance of his family, for a limited time, in a general assignment for the benefit of his creditors, shall, in all cases, be conclusive evidence in judgment of law, of an intent to delay, hinder and defraud his creditors, within the meaning of the statute of frauds, so as to vitiate and destroy the whole conveyance. I fully agree with the Chancellor, and with the decision in *Hyslop* v. *Clarke*, (14 John. 458,) that if such a provision is to be considered conclusive evidence that the conveyances were made with an intent to delay and hinder creditors, it must avoid and destroy the whole assignment ; because the statute has declared that all *conveyances* made with such intent, shall be absolutely void and of none effect. It is for that very reason, believing that cases may exist, in which such a provision would

ALBANY,
Dec. 1825

Mackie
&
Cairns.

Murray v.
Riggs consid-
ered on princi-
ple.

ALBANY,
Dec. 1825

Mackie
&
Cairns.

Whether a
bond illegal
and void in
part, by a sta-
tute, is void *in
toto.*
It is not, un-
less the sta-
tute declare
that such shall
be the effect in
terms.

be neither unjust nor improper, that I would hold it voidable only upon application to a Court of Equity, and not absolutely void within the statute.

The principle in relation to this point appears to me not to be stated with perfect accuracy by the learned Judge who delivered the opinion of the court in *Hyslop* v. *Clarke.* He says (14 John. 465,) "It appears to be an established rule that where a bond *is void in part,* as against the positive provisions of a statute, *the whole bond is void.*" Now I apprehend that if a bond contains provisions which are declared illegal, or void by statute, and other provisions, which are legal, the whole bond will not be void, unless the statute expressly provides that those illegal provisions shall render *the whole bond void.* Suppose the statute of frauds had expressly declared that any provision, for the grantor, in an assignment for the benefit of creditors, should be considered *fraudulent and void ;* would an assignment, unexceptionable in every other respect, but containing such a provision, be void throughout? I apprehend not. The statute having merely declared, that such a provision should be void, without having declared what its effect should be upon the residue of the assignment, that effect would have been left to be ascertained and determined by the rules of the common law. But if the statute had declared, not only, that any such provision should be considered fraudulent, but also that any conveyance containing any such provision should be absolutely void, then the whole deed undoubtedly would be void; not because it was void in part, as against the positive provisions of a statute, but because the statute had declared, in terms, that being void in part, it should be void throughout. The provision for the benefit of the assignor in this case, may be set aside, without affecting the other provisions of the deed, and without conflicting with any of the cases which have been cited.

I am therefore of opinion, that so much of the decree of the Chancellor as adjudges the assignment from Cairns to Sedgwick & Lord to be void, throughout, by reason of the trust or provision for the benefit of Cairns, should be reversed.

Holding the assignment to be good, there is no ground on which the judgment can be impeached as fraudulent. It is a cumulative security only, for a justifiable object. But admitting the assignment to be fraudulent, I should still hold the judgment to be valid; for the reasons assigned by the Chancellor. The written declaration of trusts accompanying the judgment, and which is testified by the oath of one of the assignees, shows that the judgment was confessed for the purpose of securing payment to certain creditors, and for that purpose only. There was no trust for the benefit of the insolvent. The judgment was not intended, (nor could it possibly have the effect) to protect the annuity to Cairns. Sedgwick swears expressly, that all the trusts were contained in the written declaration accompanying the judgment. But it is unnecessary to enlarge on this point. I think, as to judgment, the decree of the Chancellor should be affirmed.

I think both parties are entitled to the costs of their answers, as defendants to Mr. Hone's bill. They were subsequent incumbrancers; and were necessarily made parties. They both answered and disclaimed, as against Mr. Hone's prior lien, and assented to the sale of the premises, reserving their respective claims to the surplus. There is nothing to except this case from the general rule, that, on a bill to foreclose a mortgage where subsequent mortgagees or judgment creditors, who are made defendants, answer and disclaim, they are entitled to their costs, to be paid out of the fund. (3 John. Ch. Rep. 61. 13 Ves. 370. 7 Ves. 583. 2 Madd. 554, 9.)

My opinion being in favor of the validity of the assignments and judgment, which it was the object of all the proceedings, subsequent to the decree of the 12th of January, 1824, to impeach, I think Cairns, Sedgwick and Lord are entitled to their costs, upon all those proceedings before the Judge of the 1st Circuit; except the proceedings upon the petition of Mackie, Milne and Lockhart, for the examination of Cairns, which the Circuit Judge disposed of by an interlocutory decree of the 26th of May, 1824; and upon the petition of Cairns, Sedgwick and Lord for a modification of the decree of the 12th of January, 1824, which were

ALBANY,
Dec. 1825.

Mackie
&
Cairns.

No ground on which the judgment can be impeached, even admitting the assignment to be fraudulent.

On a bill to foreclose, subsequent incumbrancers who answer and disclaim as to the plaintiff, are entitled to the costs of their answers out of the fund, tho' they contest the right to the surplus as between themselves.

Cairns, &c. ought to have costs as between them and Mackie, &c.

ALBANY,
Dec. 1825.

Mackie
&
Cairns.

also disposed of by an interlocutory decree of the 27th of May, 1824. The costs of those motions having been disposed of by the Circuit Judge, I am of opinion his decision in this respect should not be disturbed. They are also entitled to all their costs of the proceedings upon appeal in the Court of Chancery; to be paid by Mackie, Milne and Lockhart.

WOODWORTH, J., and Brayton and Redfield, Senators, concurred.

The question

COLDEN, Senator. Will the law permit an insolvent debtor to assign his property; so that he may enjoy, against the will of his creditors, such part as he may choose to reserve for his own use?

However simple and disembarrassed this question may at first appear, it is one of those so elaborately argued before us, and which we have now to decide.

The facts.

Mr. Cairns, being insolvent, assigned, by several instruments, all his property to Messrs. Sedgwick and Lord, in trust, that they should allow him out of the proceeds, or out of the rents and profits, two thousand dollars a year, till he should be discharged from his debts; but the allowance was not to extend beyond four years; and upon the further trust that the residue should be distributed among certain of his creditors.

Here then is a conveyance by which an insolvent debtor reserves to himself out of his property such revenue as he *sees fit, for such time as he thinks will suit his convenience*; and when his creditors who are not among those he has chosen to favor, and who are dissatisfied, obtain an execution against his estate, they find in their way a conveyance which not only hinders them from levying their debt; but secures the property, in part at least, to their debtor.

If there be such a thing as natural equity; if we may ever appeal to those perceptions of right and wrong which are independent of all learning, it seems to me, that we may do so on this occasion; and cannot hesitate to decide that such a disposition of property is invalid.

The statute,
1 R. L. 75.

We are not left, however, to the mere dictates of natural justice. The legislature has thought proper to record its

precepts; and we have them in the statute, (1 R. L. 75,) which enacts, that every conveyance which is devised or contrived with an intent to delay, hinder or defraud creditors, shall be clearly and utterly void, frustrate, and of none effect; any pretence, colour, feigned consideration, expressing of use, or any other matter or thing to the contrary notwithstanding. That the conveyance or assignment in question has delayed and hindered creditors, the testimony before us establishes. If to put property in such a situation that an insolvent may enjoy it in defiance of those to whom he is indebted, is to defraud them, the assignments in question will, if they stand, have that effect. Generally, and unless the contrary appears, we must infer that the consequences which naturally flow from the acts of a person were intended by him. This will lead us to the conclusion that the assignments not only did hinder and defraud creditors, but were intended so to do.

It is unnecessary, however, to resort to this reasoning to arrive at this conclusion. It is avowed that the assignment was intended to prevent certain of his creditors from touching the property, so that the insolvent might enjoy that benefit from it which he had thought proper to reserve for himself; and that the residue might be distributed among those he chose to favor. One would think, therefore, that this assignment was not only conscientious, but directly against the statute.

But we are referred from legislative enactments to judicial decisions; and told that we must receive these as the law, however they may be in collision with the letter of the statute. And yet it would seem that the prescriptions of the judicial code must be contradictory, or liable to very different interpretations; for in this case many authorities have been cited by the counsel on each side, to maintain their respective, and directly opposite propositions.

We are bound to pay great respect to the opinions of other tribunals. We owe obedience to the former judgments of this court. If this court has heretofore determined that an assignment like those now under consideration, made under the same circumstances, may be maintained, we ought

ALBANY,
Dec. 1825.

Mackie
&
Cairns.

What the
Court of Er-
rors decide
must be con-
sidered as es-
tablished law,
till changed
by the legisla-
ture.

to consider this as the established law, however we might be disposed to decide otherwise if the question was now agitated here for the first time.    An inferior tribunal is at liberty to change its decisions as the opinions of its members may alter; but if this court, of the last resort, were to exercise the same liberty, there would be no security for property. The members of this court are in part annually changed; and if those who compose it at any time should feel them-selves unrestrained by the determinations of their predecessors, the rights of things and persons might vary as often as the court was in session; and we should be in that condition which one of our oldest writers says, marks a miserable people, " where the laws are vague and uncertain."    If the law, as settled by this court, be inconvenient or wrong, it must be for the legislature to change it.    They can do it without disturbing dispositions of property which may have been made in accordance with the judgments of this court; whereas a judgment here, in opposition to former decisions of this tribunal, unsettles all that may have been done pursuant to what the community had a right to consider as the established law.

With these views I shall, for a moment, advert to some of the cases which have been cited in support of the assignments.    One class of them establish that a conveyance by an insolvent in favor of some creditors, to the exclusion of others, is not against the statute.    But these cases are very different from one where an assignment reserves part of the estate to the assignor.    In the former case, though one creditor may be hindered and even deprived of any share of his debtor's property, yet it cannot be said to hinder or delay creditors, when the whole property is immediately put out of the hands of the assignor, and the whole of it goes to creditors.    In these two cases there is all the difference that there is between an assignment, the object of which is to prefer some creditors, and an assignment, the object of which, as to the part reserved, is not only to hinder but forever to defeat all creditors.

*Estwick* v.
*Caillaud,* 5 T.
R. 420.    2
Anstr. 381, S
C.

Lord Abingdon's case, (*Estwick* v. *Caillaud,* 5 T. R. 420, 2 Anstr. 381,) is one much relied upon; and I confess I find much difficulty in distinguishing that case, in principle, from

the one we are now considering. It appears to me that the report of that case developes one of those contrivances by which the nobility of England put their estates at nurse; so that they may recruit without being harrassed by importunate creditors. How far the policy of protecting the wealth of the aristocracy of England may have influenced the jury and court in favor of Lord Abingdon, I will not pretend to say. "The effect of that decision was to allow Lord Abingdon to enjoy his mansion house, park, and pleasure-grounds," to permit him to make presents of his deer, and run his horses at New Market, while his creditor, who had built his house, and whose debt had been due more than twenty years, was obliged to look on, with his execution in his hands. I will presume that this English case may be distinguished from that now before us by the circumstances which the Chancellor has noticed; but if it be not, I find nothing in this decision of the Court of King's Bench that commands my respect; and I owe no obedience to it; because it was decided long subsequently to the revolution.

It is not so with the case of Murray and Riggs, (15 John. Rep. 571;) that being a judgment of this Court, according to the principles which I have professed, I hold myself bound by the decision. Whenever another case occurs similar in all its circumstances, I will decide as this Court has heretofore decided. But I think the Court in that case carried its indulgence to the insolvent debtor to the very utmost length. I will not consent to go one step further in the same course. I think we can not do so without trampling on the statute.

When, therefore, I am to determine whether an assignment made by partners of their partnership property only, which reserves out of the property assigned a sum for their support, be void, when the creditors have acquiesced in the assignment for several years, and till the assignees have distributed the money arising from the assets, among the creditors; where no creditor has been actually impeded in the pursuit of his remedy, and where at last the creditors themselves do not sue; but the assignment is questioned by assignees under a commission of bankruptcy, I shall give an

ALBANY,
Dec. 1825.

Mackie
&
Cairns.

Murray v
Riggs, 1
John. Rep
571.

ALBANY,
Dec. 1825.

Mackie
&
Cairns.

*Austin* v.
*Bell*, 20 Iohn.
442.

*Hyslop* v
*Clarke*, 14
John. 458.

Whether the
judgment is
void.

opinion in favor of such an assignment. But I shall not attempt to give any other reason for my opinion, than that, in the case of Murray and Riggs, this Court has decided that such an assignment, under such circumstances, is good.

In the case of Austin and Bell, (20 John. 442,) Chief Justice Spencer, after having applied his great and discriminating mind to the consideration of the case of Murray and Riggs, notwithstanding that case, says, " I am bound to say, that a deed which does not fairly devote the property of a person, overwhelmed with debt, to the payment of his creditors, but reserves a portion of it to himself, unless the creditors assent to such terms as he shall prescribe, is, in law, fraudulent and void, as against the statute of frauds, being made with intent to delay, hinder, or defraud creditors of their just and legal actions." The assignments of Mr. Cairns have all these characters of the assignment of the Messrs. Secors, which induced the Supreme Court, unanimously, to pronounce that assignment void. Mr. Cairns was overwhelmed with debt. He reserved an annuity of two thousand dollars a year for four years, unless within that time his creditors would assent to his discharge.

The case before us presents none of the features which were peculiar to the case of Murray and Riggs. And I think we can not sanction this assignment of Mr. Cairns without so far repealing the statute for the prevention of frauds ; or give effect to any part of the assignments, without overruling the decisions of the Supreme Court in the cases of Hyslop and Clarke, (14 John. 458,) and Austin and Bell, (20 John. 442.)

If we decide that the assignments are invalid, we dispose of a large part of this case. The judgment confessed by Mr. Cairns remains to be considered. The language of the statute in relation to judgments and executions is the same as in relation to grants or conveyances. It is declared that they shall be clearly and utterly void, and of no effect if they be entered with intent to hinder or defraud creditors of their actions or just debts, or to hinder or let the due course and execution of law and justice. Though a judgment be fraudulent, this will never appear on the face of it. All

judgments are entered according to certain forms; and if these be duly observed, they are valid, unless they may be set aside by a court on grounds which do not appear on the record. Whether a judgment be void or not, under the statute, depends on the intent with which it was entered. The intent must be gathered from the acts and declarations of the parties in relation to it. If a judgment be intended to secure to a person a part of his property, so that he may enjoy it against the will of any one of his creditors, and if it will have that effect, it is void.

Messrs. Sedgwick and Lord, on the day the judgment was entered, executed a declaration that they held the judgment in trust for securing to the honorary and confidential creditors of Mr. Cairns, mentioned in a schedule to the declaration annexed, the payment of their debts, as in the schedule specified. Among these creditors Mackie, Milne and Lockhart are not named.

There cannot be a doubt, that if the judgment and declaration were an independent transaction between the parties, the judgment would be valid. It would be a legal means of giving a preference to creditors, which the law allows.

I entirely concur with the Chancellor in the opinion he has expressed, that where a security is taken which is defective or questionable, (and I will add fraudulent,) a party may take a new security that may be exempt from all objection. But then he must abandon the objectionable or fraudulent security. He cannot hold the good security, and yet avail himself of that which is vicious. Much less can he make the new security a means of sustaining that which was illegal. The declaration of trust cannot be conclusive as to the intent of the parties. For as to the intent, as in relation to other instruments, we must look to acts and expressions.

Mr. *Sedgwick*, in his answer to the seventh interrogatory, says, that " the instruments and judgment are now held by defendant and Daniel Lord, junior, upon the trusts declared as above stated, in relation to the same respectively." And in a further answer to the same interrogatory, he says, he " knows of no act or thing by which the trusts in the assignment of the 25th of March, or either of them, have been an-

ALBANY,
Dec. 1825.

Mackie
&
Cairns.

After a fraudulent security for debts, if a new one be taken for the same object, to be valid, it must be accompanied with an abandonment of the first.

Facts connecting the judgment with the assignments.

nulled or abrogated, impaired or modified, otherwise than by the operation of the other instruments of writing above mentioned." That is, by the subsequent assignments, and the declaration as to the judgment; all of which, except the last, refer to, and confirm the trusts expressed in the first assignment of the 25th of March.

In a petition presented to the Circuit Court by Messrs. Cairns, Sedgwick and Lord, the 4th of May, 1824, they say, they " claim as assignees under certain trust deeds or assignments, and under a certain judgment confessed to them in trust for the benefit of the creditors of Cairns; the said deeds and last mentioned judgments being all prior to the said judgment of Mackie, Milne and Lockhart."

In answer to the 4th interrogatory before Master Bolton, Mr. Sedgwick answers, that he and Mr. Lord " have at all times, since the 18th of April, 1823, insisted upon the validity of the several assignments and conveyances."

This, as well as their answer to the bill, is sufficient to show that Messrs. Sedgwick and Lord never gave up the assignments; and there is abundant evidence that, in accordance with their opinion, they continued to act under them, long after the judgment was entered.

They sold the houses to Henry D. Sedgwick and Develin, on the 15th of January, 1824, and they say they then considered themselves as holding under the assignments.

They had paid to Mr. Cairns, as they say, on account of the provision for his maintenance contained in the assignments, between two and three thousand dollars. A great part of this was paid after the judgment was entered; so that Mr. Cairns received, to his own use, this large amount of his property, while Mackie, Milne and Lockhart could receive nothing on account of their debt of three thousand dollars, which sum they had paid to Mr. Cairns for a bill of exchange, only four days before he failed, and before he made his first assignment.

Add to this, that when the sheriff, who held the *fieri facias* issued on this judgment, applied to Mr. Sedgwick to show if there was any property of Mr. Cairns on which the execution might be levied, Mr. Sedgwick told him he knew

nothing about it; by which the witness understood he had no directions to give concerning it; and when the sheriff asked him if the property had not been assigned, he answered it had.

There seems no kind of question, then, that after the judgment was entered, Messrs. Sedgwick and Lord continued not only to insist on the validity of the assignments, but to act under them.

That they availed themselves of the judgment to maintain the assignments appears from the testimony, which I shall now notice.

In his answer to the sixth interrogatory, before Master Bolton, Mr. Sedgwick states that the assignees always maintained, that if the assignments and conveyances were not good and valid in law, then the judgment was valid and binding.

In another part of his testimony, he says the judgment was to be resorted to, only in case the assignments were not valid. And again, the *fieri facias*, he says, was intended to cover all property assigned, provided the same was subject thereto, notwithstanding the assignments.

Mr. Sedgwick repeatedly states, that his intentions were fair and honorable ; and that neither the assignments nor judgments were intended by him to have what he esteemed an undue or fraudulent operation. To this, no one will more readily assent than myself. But we cannot consider declarations of this nature, from parties interested, made in exculpation of their conduct. We must interpret acts by their consequences ; and must presume persons intended to produce the effects which naturally flow from their acts. We cannot doubt that the assignees, Messrs. Sedwick and Lord, intended to continue, and would have continued to pay Mr. Cairns his annuity, and to have executed their trust according to the assignments, if Mackie, Milne and Lockhart had not instituted a suit to avoid these assignments. In what situation, then, do the assignees place the creditors by means of the judgment ? They hold to the creditors, in effect, this language : " We shall go on and execute the trust according to the assignments, whether they be good or

bad. If you institute a suit, and set the assignments aside, you can get nothing by it ; because, then, we shall claim all the property under the judgment ; and however this may benefit the favored creditors, mentioned in the schedule, yet it can be of no advantage to you." Indeed this is exactly the operation of the judgment, if this Court confirm the decree of the Chancellor as to the assignments. These will be declared fraudulent and void ; and yet, if the judgment is permitted to stand, Mackie, Milne and Lockhart will have gained nothing by their suit; but on the contrary will have borne uselessly all this litigation. Mr. Cairns may yet receive his two thousand dollars a year, if the schedule creditors do not object ; and the assignees will be perfectly secure that no other dissatisfied creditors, who may not be among those Mr. Cairns has thought proper to favor, will ever question their conduct. The judgment protects them, however illegal the assignments may be, under which, since the judgment was entered, they have acted, and may continue to act.

Let us suppose, for a moment, that the declaration executed when the judgment was entered, instead of being as it is, should have expressed trusts similar to those contained in the assignments ; that is to say, that Mr. Cairns should receive out of his property two thousand dollars a year ; provided that, if any creditor should be discontented, and should succeed in establishing, in a Court of Chancery, that this provision was fraudulent and void, then the judgment should stand good for the benefit of certain favored creditors. I cannot think that we should hesitate, for a moment, to pronounce a judgment connected with such a declaration void. It can make no difference that the trusts, as to the judgment now in question, are not on the same paper with the declaration made when the judgment was entered.

I cannot concur in opinion with the Chancellor, that the judgment is a new security, unconnected with the assignments, and exempt from all the objections which apply to them. I think the facts, as they stand before the court, so far from not admitting, as the Chancel or supposes, a presumption that the judgment was given and taken upon the

trusts expressed in the antecedent assignments, prove incontestably, that the judgment was so given and taken. The evidence that the assignees continued to act under the assignments; that they paid Mr. Cairns money according to the assignments after they had obtained the judgment, and intended to continue to act under the assignments until they should be declared invalid, is as positive proof, it appears to me, as the nature of the case admits, that the judgment was confessed by Mr. Cairns with an intent that it should be used, if it could be so used, to support the assignments and deter dissatisfied creditors from questioning them, and for no other purpose.

I therefore think that this judgment was devised and contrived to delay creditors of their lawful actions and demands, to the hindrance of the due course of the execution of law and justice, and that so it is against the statute, and must be held utterly void.

There remains to be disposed of, the two interlocutory decrees of the Circuit Court, one of the 26th May, 1824, ordering Mackie, Milne and Lockhart to pay the cost of an unsuccessful application, which they had made to have Mr. Cairns examined before the master, and the other of the 27th of the same month, ordering the same parties to pay the costs of a successful application which Messrs. Cairns, Sedgwick and Lord had made to have the decree of the Circuit Court amended.

These decrees, in my opinion, were both erroneous. The only reason that we can find for the first decree, is suggested by Mr. Sedgwick in an affidavit which he made and read to oppose the application; which is, that the whole business having been conducted under his advice and agency, he was better acquainted with all the facts than Mr. Cairns; and he, Mr. Sedgwick, having been examined, it was un necessary to examine Mr. Cairns.

But why were Mackie, Milne and Lockhart obliged to rest on the examination of one party? Had they not the same right to have Mr. Cairns examined, that they had to have the testimony of Mr. Sedgwick? Possibly Mr. Cairns and

Mackie & Cairns.

Judgment fraudulent and void.

The two interlocutory decrees in the circuit court of the 26th and 27th of May, 1824,

were both erroneous.

Mackie, &c. had a right to have Cairns examined.

Mr. Sedgwick might not have agreed in their testimony. Possibly Mr. Cairns might not have given the same answers as to the intent of the assignments and judgment, that Mr. Sedgwick had given. I can imagine no possible reason why this application should not have been granted. I think, therefore, that the Circuit Court not only erred in compelling Mackie, Milne and Lockhart to pay the costs of that application, but in refusing to let Mr. Cairns be examined.

On the 27th of May, the Circuit Court ordered that its own decree of the 12th of January preceding, so far as it ordered costs out of the fund to Mackie, Milne and Lockhart, having been unadvisedly entered without the authority of the court, should be expunged. Now, if this decree had been wrongfully entered by Mackie, Milne and Lockhart, then they might have been justly chargeable with the costs of the application to set the decree right. But Messrs. Cairns, Sedgwick and Lord state in their petition to have the decree altered, that they were informed by the solicitor of Mackie, Milne & Co., that the order that they should have costs was inserted by the solicitor of Philip Hone, the original complainant in the suit. There is nothing to contradict this information. Messrs. Sedgwick and Lord do not allege that it was incorrect; nor is there any thing to show that Mackie, Milne & Co. had ever been requested to consent to an alteration of the order. I cannot conceive, therefore, why Mackie, Milne and Lockhart should be charged with the costs of correcting this mistake. In my opinion, the orders of the Circuit Court should not have been affirmed by the Chancellor.

My opinion is, that the decree of the Chancellor, so far as it respects the assignment, be affirmed. That so far as respects the judgment, and the two interlocutory orders of the Circuit Court it be reversed, and the judgment declared void. That the money which Mackie, Milne and Lockhart have paid under the two last mentioned decrees, be refunded to them by Cairns, Sedgwick and Lord; and that they pay to Mackie, Milne and Lockhart the costs of those applications. That so much of the money arising from the sale

of the premises mortgaged to Philip Hone as remains, (after satisfying the mortgages to which the same premises were liable, and the costs of the mortgagees, or of those representing them,) be paid to Mackie, Milne and Lockhart, on account of their judgment; and that Cairns, Sedgwick and Lord pay to Mackie, Milne and Lockhart, their cost incurred in the circuit court the court of chancery and this court.

ALBANY,
Dec. 1825

Mackie
&
Cairns.

Since this cause was argued we have been furnished with a manuscript, purporting to be the report of a case decided in the Supreme Court of the state of Louisiana, sitting in the Eastern District, by which it appears that one of the assignments of Mr. Cairns now before this Court, was by the judgment of the court of Louisiana, declared to be valid. The Judges of Louisiana say, that the decree of our Chancellor, avoiding the assignment, " is most clearly correct according to the laws of this state, on the subject of insolvencies." But the court of Louisiana consider that the *lex loci contractus* ought to govern. They therefore feel themselves constrained to ascertain what is our law; and come to the conclusion, that it is settled in favor of the assignments by the case of Murray & Riggs, notwithstanding our Chancellor's opinion, that that case could not sustain the assignments of Mr. Cairns. I have already noticed the circumstances which, in my opinion, render the case of Murray & Riggs different from that in which we are now rendering our judgment. I am entirely disposed to pay to the court of the state of Louisiana all the respect that may be due to it; but when I am searching for an exposition of the decisions of our own tribunals, I think it safer to take as guides our own Chancellor and Judges, than to follow those who, as they say themselves, probably have no practical, and may be supposed to have little even theoretical knowledge of our laws. In the cases of Hyslop & Clarke, and of Austin & Bell, our Supreme Court has given a different interpretation to the case of Murray & Riggs from that which has been adopted in Lousiana. I have already assigned my reason for believing that the judg-

*Chartres* v
*Cairns, et al.*
Eastern Dist
of Louisiana
June term,
1825. M. S.

ment of the Supreme Court in these cases was correct; and I find nothing in the report of the case from Louisiana(*a*) to change my opinion.

CLARK, LEFFERTS, LYNDE, THORN and WILKESON, Senators, concurred.

(*a*) The following is the report of that case, as furnished.

*Eastern District of the state of Louisiana.—June Term,* 1825.

CHARTRES v. CAIRNS, et al.
Appeal from the Court of the first District.

MATTHEWS, J. delivering the opinion of the court. In this case the plaintiff commenced his suit by attachment, which was levied on property and funds of the defendants, alleged to be in the hands of Thomas M. Rogers, who was summoned at garnishee ; and, in the first instance, deposed that he had no property or funds in his possession belonging to the defendants ; but afterwards, on further interrogatories, disclosed the whole of the facts relative to the property which he once held for said defendants, and which has been assigned by him to persons in trust in the city of New York, for the purpose of paying certain creditors designated by the deed of assignment, and for his own support, until he should be discharged in pursuance of some insolvent or bankrupt system ; and of this assignment the garnishee had notice previous to laying the attachment, and agreed to hold the funds for the assignees.

Under these circumstances, the court below dismissed the attachment ; and from that judgment the plaintiff appealed.

The correction of the judgment of the district court depends on the validity of the *deed of trust ;* and its validity depends on the law of the state of New York as being *lex loci contractus.* Both parties, plaintiff and defendants, interested in the event of the suit, are citizens of that state ; so that whatever decision may be given, the citizens of our state will not be affected. The task which is often imposed on the courts of justice of the state of Louisiana, of deciding in controversies between citizens entirely of other states, in consequence of our attachment laws, is by no means pleasant to the tribunals, or useful to the community. With the best intentions to do right, it is with difficulty that error can be avoided in many cases arising under our own laws, of which the judges are presumed to have competent knowledge. What then must be the embarrassment and uncertainty in deciding an intricate and complicated case, which is governed wholly by foreign laws, of which the court probably has no practical knowledge, and may be supposed to have little even theoretical.

As evidence of the laws of New York, in relation to the present case, we are referred to decisions of the Supreme Court of that state, and court for the correction of errors, and also to decisions of the court of chancery as reported by Johnson. They have been attentively examined by us ; and it is believed that the judgment of the district court is supported by them. In

SAVAGE, Ch. J. (*After stating the facts.*) In my judgment, all depends upon the validity of the assignments, particularly the assignment of the 18th of April, 1823. It purports to be a conveyance of the very property out of which the fund in question arises. If it did convey the property, then, clearly, Cairns was not the owner on the 1st of August, 1823, when Sedgwick & Lord's judgment was docketted. They were themselves the owners ; and a judgment in their favor could not be a lien on their own property. If the assignment was fraudulent and void as to creditors, still it was valid as between the parties : and their rights, under it, will be the same as if it were valid against all the world. It does not lie in the mouths of the parties to the fraudulent conveyance, to say it is fraudulent. (7 John. 161.)

I lay the judgment entirely out of the question. Had the plaintiffs intended to rely upon it, they should have released to the defendant the property on which it was to become a lien. It is admitted that the judgment was intended to come in aid of the assignment; and hence the assignees have subsequently been executing the trusts of the 25th of March, and 18th of April, 1823 ; particularly the first, which relates to the provision for the insolvent.

The question then recurs, were those assignments valid ; or, if not, were they void in part, or *in toto* ? Suppose the

opposition to these decisions a decree is furnished, lately made by a court of chancery in that state, by which the same *deed of trust* now under consideration, is declared null and void, by reason of the reservation or provision contained therein, for the benefit of the grantor or assignor. This decision is most clearly correct, according to the laws of this state on the subject of insolvencies ; but it seems to be contrary to the principles recognized as prevailing in the state of New-York, by the judgments of the supreme court and court for the correction of errors, in the cases cited. Being a court of inferior jurisdiction, we cannot admit its decree has such force as to overturn those principles which seem to be established by the tribunal of highest authority. (See John. Rep. vol. 20, and the cases there referred to, p. 447, particularly vol. 15 of these reports, p. 571.)

It is therefore ordered, adjudged and decreed, that the judgment of the inferior court be affirmed with costs.

*Livermore,* for the plaintiff.

*M'Caleb,* for the defendant

---

ALBANY,
Dec. 1825.

Mackie
&
Cairns.

All depends on the validity of the assignments, which were valid between the parties.

The judgment is out of the question.

Whether the assignments were valid

ALBANY,
Dec. 1825.

Mackie
&
Cairns.

The proper-
ty of a debtor
who fails be-
longs in moral
justice to his
creditors.

debtor, finding himself in failing circumstances, had con-
veyed the whole of his property to assignees, in trust for
himself; could there be a question on the subject? An in-
solvent will not be permitted thus to defraud his creditors
and mock the insulted majesty of the laws. When a debtor
fails, either from misfortune or folly, or from dishonest mo-
tives, his property, in moral justice, belongs to his creditors.
He is permitted to prefer in payment such creditors as he
pleases. This is giving him power enough; but when he
appropriates the property to his own use, the act becomes
fraudulent. Nor does it lie in his power to prescribe terms
to his creditors. The law is open to them. They have a
right to pursue their debtor in the mode pointed out by law,
and any act which obstructs them in their pursuit is against
law, and of course void; unless such act appropriates the
property to the payment of debts.

Statute
against fraud-
ulent convey-
ances, 1 R. L.
75, is in af-
firmance of
the common
law

Our statute of frauds, (1 R. L. 75, s. 1,) declares all con-
veyances of goods, to the use of the grantor, void and of
none effect. The 2d section declares all conveyances of
lands or goods, made with intent to delay, hinder, or de-
fraud creditors, utterly void, as against such creditors. This
statute, as has often been said, is only in affirmance of the
common law.

The trusts
being good in
part and bad
in part, the
whole assign-
ments are
void.

The trusts created by the assignments are good in part
and bad in part, and the rule in such cases has been settled
in the case of *Hyslop* v. *Clarke*, (14 John. 465.) The Court
say, "It appears to be an established rule, that where a
bond is void in part as against the positive provisions of a
statute, the whole bond is void." This doctrine is recog-
nized in *Austin* v. *Bell*, (20 John. 449,) and is not contro-
verted, in terms, in any subsequent case. How far it is im-
paired, if at all, by *Murray* v. *Riggs*, (15 John. 571,) I will
next consider.

*Murray* v.
*Riggs,* 15
John. 571.

When that case was discussed by the late Chancellor, he
remarked, speaking of *Tarbuck* v. *Marbury*, (2 Vern. 510,)
that a reservation of part of the interest to himself, as in
that case, and in the one of *Estwick* v. *Caillaud*, (5 T. R.
420,) did not destroy the provision in respect to the resi-
due; though, if the part unreserved was deficient, the cred

ALBANY,
Dec. 1825.

Mackie
&
Cairns.

itors might perhaps apply to a Court of Equity for the residue. But if the power enabled the grantor to defeat the whole provision, all the cases concurred in declaring it null and void. When that case came into this court, Ch. J. Thompson, who delivered the opinion of the court, says, " The grantors having reserved to their own use, for their maintenance and support, a part of the property covered by this deed, forms no objection to the appropriation of the residue. This is fully established by the cases I have already referred to ; and is indeed admitted by the Chancellor in the case before us ; though, in case of a deficiency to satisfy the creditors, they might apply to a Court of Equity for the appropriation of the property so reserved, towards the pay-payment of their demands."

As the learned Judge had cited no case immediately to this point, I have examined all the cases cited by him. In none of them does this feature exist, except the two cases cited by the Chancellor from 2 Vern. 510, and 5 T. R. 424.

*Tarbuck v Marbury,* 1 Vern. 510.

The first of these cases was as follows : Wm. Marbury, in 1672, made a conveyance to Brook and others, of his estate to the use of himself for life, with power to mortgage such part of the estate as he pleased, remainder to the trustees and their heirs, in trust to sell and pay all his debts. Mortgages were executed on all the estate. Debts were incurred by him, by judgments, statutes, bonds, and simple contracts. The trustees having the legal estate, the creditors could not recover at law. The question in chancery was, whether the creditors by judgment and statute should be preferred to those by bond and simple contract ; or whether they should take their average with the others. The court held the deed of trust fraudulent and void ; and assigned two reasons : *first,* because Marbury continued in possession, and kept the deed in his custody, and the creditors had no notice of it ; *secondly,* that having reserved a power to mortgage, he might have charged it to the full value ; which amounted, in effect, to a power of revocation, and therefore was fraudulent as against creditors by judgment and statute. If this case proves any thing, as to the point now under consideration, it is this : that a convey-

ALBANY,
Dec. 1825.

Mackie
&
Cairns.

*Estwick* v.
*Caillaud*,   5
T. R. 420.

ance to trustees to the use of the grantor, is void; and the creditors have the same remedies as if the conveyance had never been made. But it by no means shows that a reservation, in a deed, to the use of a grantor, is valid as against creditors. It does not appear, in this case, that Marbury was indebted to any great amount. Above all, it does not appear that he was insolvent when he executed the conveyance.

The only case which is left to support this doctrine is that of *Estwick* v. *Caillaud*, (5 T. R. 420.)

In that case it appeared that the defendant had levied on certain property, in possession of the plaintiff, by virtue of an execution against Lord Abingdon, at the suit of one Townsend. Lord Abingdon being indebted, but not insolvent, (for that is not stated, nor is it inferrible,) made a conveyance to the plaintiff, of part of his property, in trust to receive the profits, and pay one half to Lord Abingdon, and the other half to his schedule creditors. On the trial, it was left to the jury to decide whether the deed was made to defraud Lord Abingdon's creditors. It appeared that Townsend's debt was one of long standing; that his father, the original creditor, had never demanded the debt; the present Townsend had not sued, nor threatened to sue, when the deed was given; and some time before it was done, Lord Abingdon had offered to pay Townsend, in the materials of a house. The debt arose originally by Townsend's father building a house for Lord Abingdon. The jury found for the plaintiff; being of opinion that there was no intention of defrauding creditors. The court refused a new trial, saying that Lord Abingdon had a right to prefer one set of creditors. Ashurst, J. says, "though a part of the profits was reserved for Lord Abingdon himself, that, alone, will not avoid the legal estate in the trustees, for the benefit of the scheduled creditors; and when those creditors are satisfied, the other creditors may apply to a Court of Equity for the residue." Buller, J. said, taking the deed by itself, it did not appear to be fraudulent. It was not stated to be a conveyance of all the property of Lord Abingdon; and the contrary appeared from the evidence, as Lord Abingdon had offered payment out of other funds; which showed

that he had no intention of defrauding Townsend. He also adds, " As Lord Abingdon assigned over more than would probably be sufficient to satisfy those creditors, it seems to me that it was a fair proposal on his part, that a certain portion of the rents and profits should be reserved for his own benefit in the mean time." This, however, had reference to the fairness of the transaction as between Lord Abingdon and the scheduled creditors.

The plaintiff, in that case, being told that his remedy was in equity, filed his bill in the Exchequer, and obtained an injunction ; and on a motion to continue it, that court considered the question of fraud as *res judicata*, having been decided in the King's Bench. And as to reaching property in the hands of a trustee, or stock in the funds, Ch. B. Macdonald said, " Courts of Equity have never granted an injunction in a similar case." (2 Anstr. 381, S. C.)

If this, therefore, is to be considered a parallel case, and as controlling the present, it proves that both the Chancellor and Chief Justice Thompson were mistaken, in saying that a Court of Equity would direct the property reserved to be appropriated to the payment of the creditors not contained in the schedule. But, in truth, it is not analogous. Lord Abingdon was not an insolvent debtor. Townsend was not a creditor pursuing his legal remedies when the deed was executed, nor for several years afterwards. Before the deed was given, Lord Abingdon offered payment. He left part of his property unconveyed ; and, as may be inferred from the remarks of Mr. Justice Buller, sufficient to pay the debt in question. Such is the case from which the late Chancellor and Ch. J. Thompson drew the doctrine, that " the grantors having reserved to their own use, for their maintenance and support, a part of the property covered by the deed, forms no objection to the appropriation of the residue." It should be stated that this was not considered the principal point in the case they were deciding.

However unsupported this proposition may be, and I think I have shown that it has no adjudged case to support it ; yet it seems to be distinctly asserted and assented to by

this Court. The Chancellor thinks the case in which it was asserted not in point for the one we are considering. It is true that Ch. J. Thompson considers all the creditors of the insolvents as satisfied with the arrangements made by the assignments. He regards this as important. And if the facts are so to be understood, there can be no objection to it; nor would it be an authority for this case. Here the creditors, Mackie, Milne and Lockhart, have never assented to the assignment. They have lost no time in endeavoring to recover their just dues by legal process. Nor are laches of any kind imputable to them.

But if the case of *Murray* v. *Riggs* is to be considered as an authority in this case—(and Ch. Justice Spencer so considered it in the case of Austin and Bell, though he evidently denied its correctness)—if it must be met, then I would ask, in the very appropriate and forcible language of the present Chancellor, "Is it law that every insolvent debtor in this state, may, by assigning all his property in trust, secure to himself an allowance of $2,000 a year, or any other sum from his own property? And, I will add, is it not directly against the statute? Our laws have specified what property of a debtor the creditor shall not take from him Any attempt of the debtor to set apart a fund for his own support must be fraudulent and void. If he may take to his own use $2,000 a year, why not $5,000? And if for four years, why not for ten, or even twenty, as in the case of *Murray* v. *Riggs*. To state such a proposition, is a sufficient refutation of it. It offends the moral sense; it shocks the conscience, and produces an exclamation. It is directly against the statute, and cannot stand before it.

But even should this assignment be considered a valid one, it is conceded that the amount appropriated to the grantor's use, may be taken to satisfy creditors, by an application to a Court of Equity for that purpose. What, in substance, is the present application, but a contest for this very appropriation? The validity of this reservation does not arise collaterally; it is directly called in question. It is almost the only ground of contention. If, therefore, it is admitted that these creditors will be entitled to the reserva

tion in question by filing a bill expressly for th it purpose; then, I would ask, why turn them out of court, when it is admitted, if they come in a different attitude, they will be entitled to what they ask ? For whose benefit are we to direct all this circuity of action ? Surely not for the benefit of the creditors ; nor yet for the benefit of the insolvent.

On the whole, I am of opinion, that the assignments are fraudulent and void, as against creditors pursuing their legal remedies ; but valid as between the parties. That the judgment constitutes no lien on the property out of which the fund in question was raised ; the equity of redemption having been previously conveyed by a deed which was valid as between Cairns and his assignees. And therefore, that Mackie, Milne and Lockhart are entitled to the fund in question, or so much thereof as will pay their judgment. Certain deductions, however, should be made from it. In my judgment, both these parties litigant should receive their costs for appearing as defendants at the suit of Philip Hone. But after the contest for this fund became a suit between them, costs should be awarded to the prevailing party.

I am of opinion, therefore, that so much of the decree of his Honor the Chancellor as awards the fund, in court, to Sedgwick & Lord should be reversed, with costs. And so much as affirms the decree of the Circuit Judge of the 27th of May, altering the decree of the 12th of January, 1824, should also be reversed with costs; and the residue affirmed.

BURT, CRAMER, CRARY, GARDINER, GREENLY, HAIGHT, LAKE, MALLORY, MCINTYRE, MORGAN, NELSON, WOOSTER and WRIGHT, Senators, concurred.

For affirmance, BOWMAN, BURROWS, DUDLEY, EARLL, ELLSWORTH and KEYES, Senators.

A majority of the court concurring in the result of the opinions delivered by SAVAGE, Chief Justice, and COLDEN, Senator, the following decree was thereupon entered:

DECREE: A majority of this court being of opinion that the assignment or conveyance made by the said William

---

*Margin notes:*

ALBANY,
Dec. 1825.

Mackie
&
Cairns.

Assignments void as to creditors ; but good between the parties. Judgment inoperative.

Mackie, &c. entitled to the fund in question, after deducting certain costs. Residue of costs to the prevailing party.

What part of the decree should be reversed, and what affirmed.

Decree.

Cairns to the said Robert Sedgwick & Daniel Lord, jun. is void, by reason of the trust or provision contained therein for the benefit of the said William Cairns, it is adjudged and decreed, that so much of the aforesaid decree of the Court of Chancery, as relates to the said assignment or conveyance, be in all things affirmed.

And a majority of the court being also of opinion, that the judgment confessed by the said William Cairns to the said Robert Sedgwick and Daniel Lord, junior, is also void, it is adjudged and decreed, that so much of the aforesaid decree of the Court of Chancery, as affirms the validity of the said judgment, be reversed.

And it is also adjudged and decreed, that the surplus moneys arising from the sale of the mortgaged premises mentioned in the pleadings in this cause, and now remaining in the Court of Equity for the First Circuit of this state, be applied as follows : first, to the payment of the amount due on the judgment in favor of the said William Mackie, Andrew Milne and Andrew Lockhart; next, to the payment of their costs as hereinafter decreed, and that the balance, if any, do remain in the said Circuit Court, subject to the order thereof.

And it is also adjudged and decreed, that the costs of the said William Mackie, Andrew Milne and Andrew Lockhart, in the Circuit Court and in the Court of Chancery, including their costs on the interlocutory decree of the Circuit Court, made on the twenty-sixth day of May, one thousand eight hundred and twenty-four ,and on the interlocutory decree of the same court, made on the twenty-seventh day of that month, be paid to them out of the aforesaid surplus moneys, provided the said surplus moneys shall be sufficient for that purpose, after paying to the said William Mackie, Andrew Milne and Andrew Lockhart, the amount of their judgment as above directed ; and in case the said surplus moneys shall not be sufficient, it is hereby adjudged and decreed, that so much of the said costs as may have accrued since the making of the decretal order, made by the Circuit Court for the sale of the said mortgaged premises, be paid to the said William Mackie, Andrew Milne and Andrew Lockhart, by

the said William Cairns, Robert Sedgwick and Daniel Lord, junior.

And it is also ADJUDGED and DECREED, that the said William Cairns, Robert Sedgwick and Daniel Lord, junior, do refund to the said William Mackie, Andrew Milne and Andrew Lockhart, the amount of the costs paid by them to the said Cairns, Sedgwick and Lord, pursuant to the aforesaid interlocutory decrees of the twenty-sixth and twenty-seventh of May, one thousand eight hundred and twenty-four.

And it is also ADJUDGED and DECREED, that so much of the aforesaid decree of the Court of Chancery, relating to the application of the surplus moneys arising from the sale of the mortgaged premises mentioned in the pleadings in this cause, and to the costs of this suit, as is inconsistent with the provisions of this decree, be reversed; and that this cause be remitted to the Court of Chancery, to the end that this decree may be carried into effect.

And it is also ADJUDGED and DECREED, that the costs of the said William Mackie, Andrew Milne and Andrew Lockhart, upon the proceedings in this court, be paid to them out of the aforesaid surplus moneys, in case the same shall be sufficient for that purpose, after payment of the judgment and costs, hereinbefore mentioned; and if not, then by the said William Cairns, Robert Sedgwick and Daniel Lord, junior.

