AUSTIN and others *against* BELL, late Sheriff, &c.

Though a debtor, in failing circumstances, may lawfully prefer one creditor, or one set of creditors, to another; and in a deed of assignment of his property, in *trust*, for creditors named in a schedule, may reserve out of the trust property a certain sum for the support of himself and family, for a limited time, and for paying the expenses of suits against the assignor, in relation to the trust, and of endeavouring to procure the discharge of the assignor; yet, if the deed of trust contains a *proviso*, that in case any of the creditors named, should not, within the time limited in the deed, which contained a release of the debtor from his debts, become parties to it, the shares or proportions of such creditors, so neglecting or refusing to execute the deed, should be paid by the trustees to the assignor himself, the deed is fraudulent and void, under the statute of frauds.

THIS was an action of trespass, *de bonis asportatis*, brought against the defendant, who, as Sheriff of *New-York*, levied on, and took away certain goods, under two writs of *fi. fa.* against *Elijah, Joshua,* and *Abraham Secor,* in favour of *D. R. Lambert.* The cause was tried at the *New-York* sittings, in *June,* 1821, before Mr. Chief Justice *Spencer.* The taking and value of the goods were admitted.

The plaintiffs claimed title to the goods in question under an indenture *tripartite,* between *E., J.,* and *A. Secor,* of the first part, the plaintiffs, of the second part, and the creditors of the *Secors,* named in a schedule annexed, who may become parties, of the third part; bearing date the 20th of *July,* 1819, whereby the *Secors,* then merchants, and trading under the firm of *E. Secor & Co.,* assigned to the plaintiffs all their property, either joint or several, real and personal, in possession, reversion or remainder, (their wearing apparel and household furniture excepted,) and also the debts and demands due to them, either jointly or severally, and particularly their stock in trade then in their store, No. 180 *Broadway ;* upon trust, that the grantees shall sell the estate conveyed, and collect all the debts, and after paying themselves the expenses, and for their services in the execution of the trust, and for services in endeavouring to obtain the discharge of the grantors, or either of them, and also such sums as the grantees may be obliged to pay *E. Secor,* (one of the grantors,) *for the maintenance and support of himself and his family, until the first day of May,* 1820, *not exceeding the rate of* 2,000 *dollars per annum,* and which allowance is to cease, after all the creditors, parties of the third part, shall have subscribed these presents, or after the grantors, or *E. Secor,* be discharged, by operation of law, from

And a judgment creditor, who had refused to become party to the deed, may, before the time limited for the creditors to come in and execute it, take the property of the debtor, in the possession of the assignees, by execution, and sell the same in satisfaction of his debt.

all his debts, *then that the assignees shall pay to E. Secor*
*600 dollars, for the purpose of paying off small accounts for*
*family expenses of himself and family,* or the like demands
against either of the grantors ; and then out of the proceeds
of the assigned property, pay all the debts of the grantors
specified in the schedule *A.*, marked first, second, third,
fourth, fifth, and sixth classes, in their respective order ;
those in the first class to be fully paid, with interest, and so,
in the order, giving preference according to the classes ;
provided, that the several creditors should, on or before
the 1st of *November* then next, become parties to the as-
signment, by executing the same : *and upon the further trust,*
*that in case any of the creditors named in the several classes,*
*should not, within the time limited, become parties to the as-*
*signment, then the grantees should pay to the grantors, the*
*proportion of such of the creditors who neglect or refuse to*
*execute these presents.* The deed contained, also, a release,
to be executed by all the creditors, releasing the grantors
from all demands on them, in law or equity. There were
other provisions in the deed, which it is not necessary to
take notice of here.

It appeared, that *Austin & Andrews*, two of the plain-
tiffs, sent a clerk to take charge of the store occupied by *E.*
*Secor & Co.*, in *October*, 1819, about three weeks before
the levy was made by the defendant ; that he was in the
store when the levy was made, and that the store had been
shut up from the time of the assignment until within three
weeks before the levy. That the object of the clerk's going
to the store, was to sell the goods which had been assigned,
no other goods having been put in the store. The goods
assigned, consisting of carpeting, were those levied on by
the defendant. The name of " *E. Secor & Co.*, carpet
store," which had been painted on the store, had been
erased before the levy.

Very few of the creditors executed the assignment, and,
among others, *D. R. Lambert* did not execute it.

The defendant gave in evidence two judgments in favour
of *David R. Lambert*, against *E. Secor & Co.*, in the Su-
preme Court, and the executions issued thereon. The first
was on a promissory note made by *E. Secor & Co.*, dated

ALBANY,
Janua.y,1828.

AUSTIN
v.
BELL.

1st of *December*, 1818, payable in eight months, for 986 dollars and 24 cents, on which judgment was docketed *October* 22*d*, 1819. The other was on two notes, of a like date, and on money counts. The judgment was docketed *October* 18*th*, 1819, for 3,913 dollars and 27 cents. The balance on both executions, was 4,289 dollars and 69 cents. One execution came to the defendant's hands on the 18th of *October*, and the other on the 22d of *October*, 1819, by virtue of which, the carpeting, formerly belonging to *E. Secor & Co.*, was levied on, in the store before occupied by them.

The plaintiffs proved that they took possession of the goods immediately after the assignment; and, also, the payment of six notes drawn by *E. Secor & Co.*, and endorsed by *Austin & Andrews* for the said *E. Secor & Co.*, and which, after their failure, *Austin & Andrews* had been compelled to take up, amounting to 22,000 dollars, and, also, several checks, leaving a balance due *Austin & Andrews*, on the 20th of *July*, 1819, from *E. Secor & Co.*, of 33,881 dollars and 6 cents; and it was admitted, that *E. Secor & Co.* owed *Heard*, (the other plaintiff,) at the time of the execution of the assignment, 8,882 dollars and 42 cents. A verdict was taken for the plaintiffs for 4,289 dollars and 69 cents, subject to the opinion of the Court, on a case, containing the facts above stated.

*S. Ford*, for the plaintiffs, contended, that the assignment by the *Secors* to the plaintiffs, was legal and valid. The law permits a debtor to prefer one creditor, or one set of creditors, to another. (*Riggs* v. *Murray*, 2 *Johns. Ch. Rep.* 577. and S. C. *Murray* v. *Riggs*, 15 *Johns. Rep.* 571—583. *Estwick* v. *Caillaud*, 5 *Term Rep.* 420. *Jackson* v. *Lomas*, 4 *Term Rep.* 166.) In *Jackson* v. *Lomas*, there was a clause in the trust deed, that no creditor should take any part under the deed, who did not sign a release of the assignor; but no objection was made to the deed on that account. In *Riggs* v. *Murray*, the Chancellor says, " a reservation of a part of the interest to himself, (the debtor,) as in *Tarback* v. *Marbury*, (2 *Vernon*, 510.) and in *Estwick* v. *Caillaud*, does not destroy the provision, in respect to the

residue, though, if the part unreserved be deficient, the creditors might, perhaps, apply to a Court of equity for the residue." Chief J. *Thompson*, in delivering his opinion, in the Court of Errors, in the same case, (15 *Johns. Rep.* 583. 585. 588, 589.) said, it was a well established principle, both in law and equity, that a failing debtor has a just, legal, and moral right, to prefer in payment one creditor, or set of creditors, to another. That a reservation by the assignors of a part of the property assigned in the trust deed, to their own use, for their maintenance and support, formed no objection to the appropriation of the residue.

Again ; the possession and legal estate in the property assigned, being in the plaintiffs, the assignees, a residuary interest in the assignors could not be taken and sold under an execution. ( *Wilkes & Fontaine* v. *Ferris*, 5 *Johns. Rep.* 335. *Rex, in aid of Maddock*, v. *Watson*, 3 *Price's Ex. Rep.* 6.) In the present case, the deed was clearly valid, until the first day of *November*, the time limited for the creditors to come in and sign the deed, until which time there could be no resulting trust. The case of *Hyslop* v. *Clark*, (14 *Johns. Rep.* 458.) which may be cited on the other side, is distinguishable from the present case. In that case, there was an express provision, that if any of the creditors should refuse to sign a discharge, the whole trust was to be void.

*Oakley*, contra. The statute for the prevention of frauds (sess. 10. ch. 44. s. 1, 2. 1 *N. R. L.* 75.) expressly declares, that all deeds and conveyances of goods and chattels, in trust for the use of the person making the same, shall be void, and of no effect. In the deed, in the present case, part of the property is to be held to the use of the assignors. It is a conveyance, then, *pro tanto*, in trust for the use of the grantor, and so within the words of the first section of the statute. A conveyance void in part, by statute, is void in the whole. (*Hyslop* v. *Clark*, 14 *Johns. Rep.* 458.)

Again ; it is provided, that if any creditor refuses to sign and discharge the assignors, then the assignees are to pay his share to the assignors, not to the other creditors. Ano-

ther feature in this assignment is, that no creditor is to be benefited by it, unless he discharges the debtor. This is an attempt to coerce the creditors to release the debts due to them ; but the law recognises no assignment which is not absolute and unconditional. The case of *Hyslop* v. *Clark*, which was admitted, in *Murray* v. *Riggs*, in the Court of Errors, to be good law, is directly in point, and decisive of the present case. In the case of *Estwick* v. *Caillaud*, (5 *Term Rep.* 420. S. C. 2 *Ansth. Rep.* 381.) the assignment was of a part only of the debtor's estate, and the assignor had offered to pay the creditor out of other property. That case shows merely that a debtor may lawfully assign part of his estate, for the benefit of particular creditors, if he has property enough left to pay his other creditors. There was no creditor, in that case, to be defrauded. In *Burd* v. *Smith*, (4 *Dallas*, 76.) the assignment was held void, on the ground, that there was a resulting trust, in case of a dissent of any of the creditors, for the benefit of the debtor himself. In *Murray* v. *Riggs*, the only point to be decided, was, whether a deed, with a power of revocation, was valid. Chief Justice *Thompson* rests his opinion on the validity of the last assignment. The respondents, in that case, were not judgment creditors pursuing their legal remedies ; and the assignment might be considered valid, until a judgment creditor appeared, seeking to enforce his legal remedy against the deed, as was the fact in *Hyslop* v. *Clark*. Here are judgment and execution creditors. In *Pickstock* v. *Lyster*, (3 *Maule & Selw.* 371—376.) the Court rely on the fact, that there was no stipulation for the benefit of the assignor himself, but all his property was fairly to be distributed among all his creditors.

*Foot*, in reply, commented on the cases which had been cited, and insisted, that, according to the doctrine laid down in *Murray* v. *Riggs*, the assignment in this case was legal and valid.

SPENCER, Ch. J. delivered the opinion of the Court. The question here is, whether the assignment by *E. Secor & Co.* is fraudulent, as regards *Lambert* and the other creditors

ALBANY,
January, 1823.

AUSTIN
v.
BELL.

who did not become parties to the assignment, by subscribing the same, and who must, therefore, be regarded as disagreeing to it. The grounds on which the assignment is supposed to be legally fraudulent are, that it contains stipulations, reserving such sums as may be necessary to defray the expenses of defending suits at law or equity, against the assignors, in relation to the trust created; and for services in obtaining, or endeavouring to obtain, the discharge of the assignors from all their debts; and also such sums of money as the trustees may be obliged to pay to *E. Secor*, for the support of himself and family, until the first of *May*, 1820, not exceeding the rate of 2000 dollars per annum; and, also, because, with respect to such creditors as should not assent to the assignment, by becoming parties thereto, and executing the same, by the first day of *November*, 1819, that the trustees should pay to the assignors, the proportion of such creditors as should neglect or refuse to execute the deed.

The case of *Murray* v. *Riggs* and others, decided in the Court of Errors, (15 *Johns. Rep.* 571.) bears upon some of the objections made to this assignment. It appears that a majority of the Court concurred in the opinion delivered by Chief Justice *Thompson;* and that the decree of the Court of Chancery was reversed, on the ground that the assignment of the 31st of *May*, 1800, was legal and valid. We are bound by that decision, whatever our private opinions may be, as to its accuracy or solidity. In that case, one of the appointments and reservations in the trust deed of the 31st of *May*, 1800, was, that the trustees should pay out of the proceeds of the property assigned, towards the support of the grantors, from the 28th of *March*, 1798, until they should be respectively discharged from their debts, or until one year after they should be discharged by law, a sum not exceeding 2000 dollars a year, for each of the grantors. As to this reservation, the Chancellor was of opinion, on the authority of *Estwick* v. *Caillaud*, (5 *Term Rep.* 420.) that it did not destroy the provision in respect to the residue; and he intimates an opinion, that if the part not reserved was deficient, the creditors might apply to a Court of equity for the residue. (2 *Johns. Ch. Rep.* 580.) In this part of the Chancellor's opinion, Chief Justice *Thompson* concurred. This.

then, puts an end to the objection made to this assignment, as to a reservation out of the trust property, of a support, for a limited time, for one of the assignors; and it is equally decisive of the other objections, as to the provision for defraying the expenses of suits against the assignors in relation to the trust, and for expenses in endeavouring to obtain their discharge; for they fall within the same reason. I will merely remark, that the case of *Estwick* v. *Caillaud*, was decided on the ground, that although Lord *Abingdon* had not assigned all his property, it appeared that he reserved enough to satisfy the particular creditor, who sought to set aside the assignment, and that the other creditors had, for many years, acquiesced in it.

In the case of *Murray* v. *Riggs* and others, there was a provision in the assignment of the 31st of *May*, 1800, that the assignees should hold the balance of trust property subject to the further order of the assignors, and that the creditors who should not, in one year, accept of the conditions, or who should knowingly embarrass the objects of the assignment, should be for ever excluded from any share under the assignment. The only remaining question is, whether the stipulation reserving to the assignors the proportions of such of the creditors as neglected or refused to execute the assignment by the first day of *November*, 1819, renders it fraudulent and void. In this case, *Lambert* sued out his executions, and levied on the property assigned, a few days before the first day of *November*, 1819. The difference between the provision in the deed of the 31st of *May*, 1800, in the case of *Murray* v. *Riggs*, and the provisions of this deed, is this; in the former case, the creditors who refused, for one year, to accept of the conditions, or who should embarrass the objects of the assignment, were for ever excluded from any share, but it was not provided that the shares to which they would have been entitled, by accepting the conditions, should revert or result back to the assignors; but, in this case, instead of throwing the distributive shares of such as refused to execute the assignment, into the general mass, for the benefit of all the creditors, it is expressly reserved to the assignors themselves. In the case of *Murray* v. *Riggs*, Chief Justice *Thompson*, observed, " for any thing

that appears, all the creditors of *Robert Murray & Co.* (the grantors,) were satisfied with the assignment, and the provision there made for the payment of their debts." He went on to say, " this is an important feature, in which this case is distinguishable from that of *Clark* and *Hyslop*." In the case of *Hyslop* v. *Clark and others*, (14 *Johns. Rep.* 458.) the assignment contained a provision, that if any of the creditors should refuse to give the assignors a discharge from their entire debts, then the trust, providing for the payment of the scheduled creditors rateably, should cease and become void, and the trustees were directed not to execute it; and, in that event, the deed further provided, that the trustees should hold the property assigned in trust, in the first place, to pay the debt due to *Robert Hyslop & Co.* and then to pay the avails of the assigned property to such of the creditors as the assignors should appoint ; and upon the further trust, in any event, that the overplus should be paid to the assignors.    The case of *Hyslop* v. *Clark* was decided in *October* term, 1817, and the case of *Murray* v. *Riggs*, in *February*, 1818. Chief Justice *Thompson* assented to the decision in *Hyslop* v. *Clark*, and it cannot be admitted, that he intended to overrule that case, by any thing he said in the case of *Murray* v. *Riggs*.    The contrary, in truth, appears, from his distinguishing between the two cases, as has already been mentioned.    Mr. Justice *Van Ness*, who delivered the opinion of the Court, in *Hyslop* v. *Clark*, considered that part of the deed which declared the trust void, on the refusal of the creditors to give releases, and which, in that event, directed the avails of the property to be paid to such of the creditors as the assignors should appoint, as an attempt on the part of the debtors to place their property out of the reach of their creditors, and to retain the power to give preference to creditors, at some future period. That it was, also, one object to coerce the creditors to acquiesce in the terms offered them, and that, therefore, that part of the assignment was void under the statute of frauds ; and that being void in part, as against the provisions of a statute, it was void *in toto ;* and in this opinion the Court unanimously concurred.    Now, I cannot perceive any material distinction between the case of *Hyslop* v. *Clark*,

and the one before us, unless, indeed, it be that this is a stronger case of legal fraud.   In this case, on a refusal by any of the creditors to execute the assignment, their shares in the division of the property assigned were to revert to the assignors.   In other words, it was to be at their absolute disposal, to apply to their own use, or to pay to their creditors, as they pleased.   This is not only an attempt to coerce creditors, and to place the property beyond their reach on execution, but it is the reservation of property which ought to have been devoted to the payment of their debts, to their own private benefit and use.   Without, in the least, impugning the doctrine, that a man in debt has a right to give a preference to creditors, I am bound to say, that a deed which does not fairly devote the property of a person, overwhelmed with debt, to the payment of his creditors, but reserves a portion of it to himself, unless the creditors assent to such terms as he shall prescribe, is, in law, fraudulent and void, as against the statute of frauds, being made with intent to delay, hinder, or defraud creditors of their just and legal actions.   In *Seaving* v. *Brinkerhoff*, (5 *Johns. Ch. Rep.* 329. 332.) this principle is fully adopted and recognised. The case of *Burd* v. *Smith*, (4 *Dallas' Rep.* 76.) is expressly in point.   In that case, *M‘Clenachan*, being overwhelmed with debt, but having a large property in possession, and many suits depending against him, made an assignment of his property to trustees.   One of the trusts was to pay rateably, to such of the creditors as should, in writing, agree to accept the same, within nine months after the date of the assignment, and to pay to *M‘Clenachan* the proportion of all such creditors as should not signify their acceptance, within the specified time, to the intent, that he might therewith compound with and satisfy such creditors.   On the ground, among others, that the deed contained a resulting trust to the grantor, thereby placing the dissenting creditors in his power, and that this was a badge of fraud, the majority of the Court pronounced the deed to be fraudulent and void.

The only remaining question is, whether, as the property assigned was levied on before the time limited for the creditors to signify their assent, by executing the deed, the deed was not operative and valid until after the first of *November;*

and if so, then, whether the levy and seizure can be justified? In the case of *Burd* v. *Smith*, the assigned property was sold by a creditor within the nine months, allowed to the creditors to signify their acceptance. Though the objection was taken on the argument, that *M'Clenachan* had nothing but a contingent interest in the property assigned, yet the Court held, that the title of the purchaser under the judgment was good. In the case of *Hyslop* v. *Clark*, no time was limited within which the creditors were to assent, and *Clark* had dissented. The attention of the Court was not, therefore, pointedly called to the consideration of the question now presented. *Lambert*, by suing *E. Secor & Co.* and by issuing executions on his judgments, had definitively made his election, and taken his stand, not to come in under the assignment, nor to execute it; therefore, as regards him, he is in the situation of a creditor refusing to execute the assignment, and able to make the objection, as well before as after the first of *November*, 1819, that it is void. The case of *Wilkes & Fontaine* v. *Ferris*, (5 *Johns. Rep.* 344.) is referred to, as containing a doctrine that invalidates the lien in this case. The Court there say, that *Cheriot* might have a resulting trust, after the purposes for which the assignment was made were satisfied, and that such residuum of interest was not the subject of sale on a *fi. fa.*; but the Court had, in the same case, decided that the assignment was valid. Where the assignment itself is void, as against a statute, and where the creditor takes the property on execution, which that assignment intended to convey, he takes no *residuum*, nor equitable interest of the assignors, but he takes property belonging to his debtors, the title of which never passed from them to their assignees. The effect of our opinion will be to give to one of the creditors an entire satisfaction of his debt, while others, equally meritorious, may go, either wholly or partially, unpaid. But the law serves those who are vigilant; and the creditor who has first obtained judgment and execution, reaps the fruits of his vigilance. The preference which the plaintiffs have lost, and *Lambert* has acquired, may be attributed to the plaintiffs' indiscretion, in assenting to become trustees in a deed, which the policy of the law must condemn.

Judgment for the defendant.