The plaintiff in this case having served a written complaint, verified, the defendant was required to put in a verified written answer; and such answer, if intended to put in issue any allegation of the complaint by a denial thereof, should contain a denial under oath, for such was the evident intention of the legislature in requiring a verified pleading. In this case the answer stated that the defendant, by his attorneys, "alleges and respectfully shows" that certain allegations of the complaint "are denied." A verification of such an answer, that it is true, affirms nothing with respect to the truth of the denial. The plaintiff is entitled to a direct denial by the defendant, either general or specific, of the averments of the complaint. The answer here does not commit the defendant to any such denial. If prosecuted for perjury, on the ground that the complaint was true, and he knew it, he might argue that he never swore it was not true, but only swore that he "alleged that it was denied," and offer to show that it had been denied by some one, no matter whom, which would be sufficient to bring him within the terms of his oath, and so permit his escape from the charge. Plaintiffs would be deprived of all the advantages intended to be secured to them by the statutory requirement if an oath to their adversaries' denials could be avoided by the adoption of some such formula of words as was adopted by this defendant.

As the answer contained no denial of the plaintiff's first cause of action, she was entitled to judgment upon it, unless the defendant were permitted to amend on the trial, under the power conferred upon the justice. Code, § 2944, made applicable to district courts by Consol. Act, § 1347. The plaintiff was not bound to move to make the answer more definite and certain. Clark v. Dillon, 97 N. Y. 370–374.

For the error in denying the plaintiff's motion for judgment on the first cause of action, the judgment must be reversed, and a new trial ordered. It is proper to say with respect to other rulings of the justice which may be the subject of exception upon the new trial that the exclusion of evidence that defendant made no sales or purchases of stocks, and that his transactions were fictitious, was proper; for the complaint expressly alleges purchases and sales and holding of stock. There was no allegation that the transactions were fictitious, and so the evidence offered was not within any issue presented by the pleadings.

Judgment reversed, and a new trial ordered, with costs to appellant to abide event. All concur.

---

(21 App. Div. 525.)

In re GINSBERG.

(Supreme Court, Appellate Division, First Department. November 5, 1897.)

1. FRAUDULENT ASSIGNMENT FOR CREDITORS—ACCEPTANCE—ESTOPPEL.
   If a general assignment for the benefit of creditors is in fact fraudulent on the part of the assignor, it is void as to creditors who elect to impeach it, and as to them passes no title to the assignee; and therefore a creditor who elects to affirm it cannot hold the assignee or his sureties liable for

property which is seized under an attachment, and sold upon the execution, in an action by another creditor based upon the invalidity of the assignment.

**2. SAME—FRAUD OF ASSIGNEE.**
    The same result follows even though the assignee also participated in the fraud of the assignor which rendered the assignment void as against the attaching creditor, for such fraud, being committed individually, and before he became assignee, would not be chargeable to him in his accounting as assignee.

**3. SAME—ACCOUNTING BY ASSIGNEE.**
    Nor, in such a case, would his participation in the original fraud deprive him of the right, upon his accounting as assignee, to be credited with his expenses in bringing or defending actions or proceedings, unless the cause adopted and the expenses incurred by him were improper and improvident.

Appeal from special term.

In the matter of the general assignment of Morris Ginsberg to Max Hallheimer. From an order modifying the report of a referee, and confirming the report as modified, and directing payment of balance found in the hands of the assignee on his removal, to a new assignee, the general assignee and his sureties appeal. Reversed.

Argued before VAN BRUNT, P. J., and WILLIAMS, PATTERSON, and INGRAHAM, JJ.

Charles J. Patterson, for appellants.
George C. Comstock, for respondent.

WILLIAMS, J. The assignment was made December 23, 1887. The assignor was a wholesale jeweler, and the assignee was his brother-in-law, and a lawyer. Immediately after the assignment had been made and the assignee had taken possession of the assigned property, litigation was instituted by various creditors, based upon the invalidity of the assignment by reason of alleged fraud in making the same. This litigation was carried on for years, and the attacking creditors were substantially successful in the end. Some of the creditors brought actions against the assignor upon their claims, procured attachments, and seized some of the property, which was subsequently sold upon execution, and the moneys realized were received by such creditors. Other creditors, after recovering judgments against the assignor upon their claims, commenced actions to set aside the assignment as to them on the ground of fraud; and these creditors were successful, and secured payment of their claims out of the assigned property. Other creditors instituted proceedings for the removal of the original assignee, and the appointment of a new assignee in his place, and for an accounting. In December, 1893, an order was entered removing the original assignee, and appointing a new one, and directing the original assignee to account before a referee. Such accounting has been had. The referee has made his report. The court has passed upon such report, and from the order made thereon this appeal is taken.

Various objections are made to the account, as stated, which we are to consider. The first question raised is as to an item charged to the assignee, of $10,301.95. This item represents the value of the merchandise in the store at the time the assignee took posses-

sion under the assignment, December 23, 1887. Four days later, December 27, 1887, all this merchandise was seized by the sheriff under the attachments hereinbefore referred to. The creditors indemnified the sheriff, and he removed the property, and finally sold it upon their executions; and the creditors realized therefrom about $10,000, their total claims amounting to $16,427.54. This property was never recovered back by the assignee, nor administered by him as a part of the estate. He brought an action in June, 1888, against the indemnifying creditors, to recover damages for the conversion of this property; but the prosecution of that action was enjoined by the court, in an action brought by other creditors to set aside the assignment for fraud. The latter action was brought to trial, and resulted, in April, 1889, in a judgment in favor of the defendants. The order enjoining the prosecution of the action for conversion was then vacated, and the assignee was permitted to proceed with that action. It was about to be moved for trial in October, 1891, when the defendants therein proposed a settlement, the terms of which were that the defendants should pay to the assignee $4,000 in cash, and release all their claims against the estate. Upon application of the assignee, the court approved of the settlement, and authorized it to be made, and it was made, and was finally carried out in March, 1892. The assignee received the $4,000. An appeal was taken by the plaintiffs in the action to set aside the assignment, and, at the time the settlement referred to was made, that action and appeal were discontinued. Four other actions to set aside the assignment were, however, subsequently brought; and in all of them it was adjudicated that the assignment was void, by reason of fraud of both the assignor and the assignee; and the referee, upon this accounting, found such fraud as a fact, and the court approved of such finding. At the time the attachments were issued, and this merchandise in the store was seized, therefore, there was a valid reason for the issuing of the attachments. And, when the settlement of the action for conversion was made, the defendants had a perfect defense to that action. Hess v. Hess, 117 N. Y. 306, 22 N. E. 956. This property was lost to the assignee (except the $4,000, secured by the settlement) by reason of the fraud in making the assignment, and not by reason of any misconduct of the assignee after he became such. The fraud of the assignor in making the assignment rendered the assignment void as to the creditors who elected to impeach it. As to such creditors, no title to this property passed from the assignor to the assignee. The title remained all the time in the assignor, and subject to the attachments issued against his property. It was not necessary to accomplish this result that the assignee should participate in the fraud or have notice of it. As assignee, he was in no sense a bona fide holder of the property, and the fraud of the assignor alone was sufficient to render the assignment void as against the attacking creditors, and to prevent the title to the property from passing to the assignee. The assignee never had any title to or right to possession of the property as against the attaching creditors. Knower v. Bank, 124 N. Y. 559, 27 N. E. 247; Austin v. Bell, 20 Johns. 451; Loos v. Wilkinson, 110 N. Y. 214, 18 N. E. 99. The as-

signment was purely a voluntary one. It was in fact fraudulently made. The creditors might disregard it, and follow the property as belonging to the assignor, or they might affirm it as legal, and take their rights under it. Some creditors here took the former course, and followed the property,—a part by attachments, and others by suits to set aside the assignment as to them, and to procure the satisfaction of their judgments out of the assigned property. The remaining creditors affirmed the legality of the assignment, and sought to enforce their rights under it. Their rights, however, were subject to the rights of the impeaching creditors; and they could only have the benefit of the property remaining after the claims of such other creditors were satisfied. The assignee, as such, and his sureties, can only be held liable for his misconduct as assignee in administering the assigned property which he acquired a legal title to and the right to possession of. The assignee could not be compelled to account to the creditors claiming under the assignment for property which he never took under such assignment, but which the impeaching creditors secured and applied towards the payment of their claims. This $10,301.95 item was not therefore chargeable to the assignee. All this property was taken and appropriated by the attaching creditors, and the creditors claiming under the assignment had then no interest therein. The assignee, by virtue of the settlement made with the approval of the court, secured from the attaching creditors $4,000 in money, and this item was properly chargeable to him. The creditors claiming under the assignment had also the benefit of the release by the attaching creditors of all further claims against the assigned estate. The referee and the court below attempted to justify the charging of this item to the assignee, upon the ground that the assignee participated in the fraud of the assignor, which rendered the assignment void as to the attaching creditors. But this fraud was not the fraud of the assignee as such. It was his fraud as an individual, and committed by him before he became such assignee; and he could only be called upon to account for his acts as assignee after he became such. It must be remembered that his sureties only undertook that he should faithfully discharge his duties as assignee. They did not undertake that he had been guilty of no fraud or misconduct before he became such assignee. The order of the court, which is binding upon them as well as the assignee, makes them liable for the results of his fraudulent acts before he became such assignee. It is apparent that the sureties could not be held so liable. The accountability of the assignee as such, and the liability of his sureties, are precisely the same, and are fixed by the same order; and, as to the assignee and his sureties, this item was an improper charge.

The referee and the court below refused to allow the assignee, as a credit against the item of $4,000 cash received upon the settlement of the conversion action, the expenses incurred in such action by the assignee. This refusal was attempted to be justified by reason of the fraud of the assignee, to which reference has already been made. The same reasoning is applicable to this item as to the other. The assigned estate had the benefit of the $4,000 in cash, and the

action was necessarily brought and the expense therein incurred to secure this benefit. The estate should bear the expense, having received the benefit secured thereby.

The referee and the court below refused to allow the assignee credit for the expense incurred by him in the defense of the several actions brought to set aside the assignment for fraud; and this refusal was attempted to be justified, not upon the ground that the defenses were improperly made and the expenses improvidently incurred, but upon the ground, already referred to, that the assignee participated in the fraud which rendered such action successful. This ground is not tenable. The duty of the assignee to the creditors whom he represented was to defend the assignment, provided there was reasonable prospect of success. If he knew the expenses incurred in such defense would be lost to the creditors claiming under the assignment, he might be denied credit therefor, on the ground that they were improperly or improvidently incurred, because the defense would fail. The creditors claiming under the assignment would certainly have had cause to complain if the assignee had abandoned the assignment, and allowed judgments by default setting aside the assignment for fraud. The assignee did not concede that the assignment had been fraudulently made, and a long litigation was necessary to establish such fraud. The fraud was found upon the evidence largely of the assignor, and in opposition to the evidence of the assignee. The ground upon which these items were disallowed, that the assignee participated in the fraud that rendered the assignment invalid, was, in effect, that the assignee and his sureties were liable for the results of the acts of the assignee, as an individual, and before he became such assignee. This accounting was one under the assignment regarded as a valid one, and not under judgments setting aside the assignment as void for fraud; and the question here was not whether the assignment was void, because the proceeding was under it as valid, the real question being whether the assignee acted properly in defending the assignment against the attacks of certain creditors who sought to impeach it, or whether the defenses and the necessary expenses incurred therein were improperly and improvidently made. We see no reason for refusing these credits, except upon the ground that the assignee knew the defense would fail, and therefore ought to have permitted judgments therein to go by default, and not to have incurred these expenses. Such finding has not been made by the referee or the court below, and we cannot act upon the assumption of any such state of facts.

The disallowance of the credit for expenses of the accounting before the referee Holcomb was improper. That proceeding was not voluntarily commenced by the assignee, but was ordered by the court upon the petition of a creditor. After proceeding for a little time, the creditor desired to discontinue it. The expense already incurred was small, and the assignee consented to discontinue without costs, and without attempting to force it on to a final determination and direction by the court as to costs. The actions to set aside the assignment were then pending and un-

determined, and it was a very proper exercise of discretion by the assignee to treat the matter as he did. He should be allowed for the expenses actually incurred by him in the matter.

A small item of costs paid by the assignee for leave to serve supplemental answer in Folkart against Ginsberg and Hallheimer should have been allowed the assignee as a credit. It was claimed that the plaintiff, after commencing his action, had discharged and released his claim upon which the action was based, and the assignee desired to plead this discharge and release. It was quite proper that he should incur this expense, and it should be allowed. in his account.

There was no good reason why the assignee should be charged with $1,301.13, for goods sold at auction, when the assignee received therefor only $1,048.15.

The assignee was improperly charged with accounts which he did not and could not collect. We do not deem it necessary to go over these accounts in detail. There will have to be a new hearing before another referee, and the judgment of the new referee with reference to the facts should be had. Although the assignee was guilty of participation in the fraud of the assignor leading up to the assignment, still he was entitled to fair treatment upon the accounting. He should not be charged with property he never had and was not allowed to administer, nor with the proceeds of property he never realized. He should, moreover, be allowed credit for expenses necessarily incurred in the administration of the trust. Especially should he be treated fairly when the same determination fixes, not only his own liability, but also that of the sureties upon his bond.

We cannot agree with the court in approving the report of the referee. The order appealed from should be reversed, the report of the referee set aside, and a new referee appointed to take the accounting. In the final adjustment of the account, the assignee should be allowed the expenses of the accounting before the first referee and of this appeal; and, if the fund is inadequate to meet the expenses of the two references and of this appeal, the respondents should pay the assignee the costs of this appeal. All concur.